Charlotte FLENTJE *v*. FIRST NATIONAL BANK of WYNNE

99-848                                    11 S.W.3d 531

Supreme Court of Arkansas
Opinion delivered March 2, 2000

564

*Richard W. Roachell* and *Nicana C. Sherman*, for appellant.

*Dover & Dixon, P.A.,* by: *Charles W. Reynolds,* for appellee.

LAVENSKI R. SMITH, Justice. Appellant Charlotte Flentje appeals a summary judgment in favor of Appellee First National Bank of Wynne ("FNB" or "the bank") in her suit alleging gender discrimination under the Arkansas Civil Rights Act. The Arkansas Court of Appeals certified the case to this court because it contains issues of first impression under the Arkansas Civil Rights Act. Hence, we have jurisdiction under Ark. R. Sup. Ct. R. 1-2(b)(1). We affirm.

## Facts

Flentje began working for FNB in August of 1976. During her eighteen years at the bank, Flentje served as a bookkeeper, a teller, a branch-office manager, and as the bank's ATM Representative/ Administrator. In September 1993, Flentje underwent a job evaluation by her supervisor, Connie Watts. In this performance review, Watts scored Flentje on a scale of "one" to "five," with "one" being outstanding and "five" being unacceptable, in twenty-one different work categories. Out of the twenty-one factors, Flentje did not score a "one" in any area, and scored a "five" in the area of

"attitude" towards customers and employees. In the other twenty areas, Flentje scored five "fours" for poor work in the areas of quantity of work, speed of work, control over frustration and personal problems, employee relations, and customer relations. Flentje scored six "twos" and eight "threes" in the remaining fifteen areas. Based on this performance review, Flentje was placed on probation for forty-five days.

In January 1994, FNB's board of directors met and discussed the bank's low productivity and profits. According to the affidavits submitted by FNB in support of its motion for summary judgment, the bank had been experiencing a significant reduction in income in 1992 and 1993, and the projections for the 1994 fiscal year indicated another potentially low-profit year. The board directed the bank president, Tandy Menefee, to explore methods to reduce costs, including personnel costs, in order to increase profitability. Menefee, in turn, organized a committee of several of the bank's managers and vice presidents to evaluate options for expense reduction within the bank's departments. The committee ultimately recommended that four positions be eliminated. FNB terminated Flentje, along with three of her co-workers, on March 21, 1994. Flentje, a single woman, was eight months pregnant at the time. The other positions eliminated included an auditor, a correspondence secretary, and a vice president/business development officer. The bank considered the four to be at-will employees. The bank had no seniority system. Besides the eliminated positions, the bank also canceled creation of two additional new positions, and declined to refill one position when an existing employee quit. In all, seven positions were eliminated in the reduction-in-force decisions.

On April 13, 1995, after her termination, Flentje filed suit in federal court against FNB under Title VII of the federal Civil Rights Act of 1964 and under the Arkansas Civil Rights Act, Ark. Code Ann. §§ 16-123-101 (1993) et. seq. In September 1996, Flentje dismissed her federal lawsuit and filed the instant action in state court. Flentje alleged that FNB terminated her because of pregnancy which, if proven, would constitute gender discrimination expressly prohibited under Ark. Code Ann. § 16-123-107(a)(1). Specifically, Flentje alleged that Menefee and Watts began treating her differently after they learned that she was pregnant, and that Menefee told Watts that Flentje should not have the baby under the circumstances but instead should "get rid of it."

Additionally, Flentje alleged that the bank had discriminated against other employees, including Oscar Thomas, who FNB also discharged in the reduction in force. FNB answered the complaint on November 1, 1996, denying the allegations of discrimination.

Following the initial pleadings, the parties engaged in discovery, including exchanging interrogatories and conducting depositions. The interrogatories and answers to interrogatories were filed with the court. On February 2, 1999, FNB filed a motion for summary judgment, to which it attached affidavits from Menefee, Watts, and Shelby Mitchell, Director of Financial Services for the bank. FNB also attached excerpts from Flentje's and Menefee's depositions. In its motion, FNB argued that Flentje could not establish a prima facie case of gender discrimination. FNB argued that Flentje could not show that the Bank used her pregnancy as a determinative factor in her termination nor that the reasons given for the workforce reduction were a pretext for discrimination. FNB further asserted that the Arkansas Civil Rights Act provides that an employer "may avoid liability under this subchapter by showing that his actions were based on legitimate, nondiscriminatory factors and not on unjustified reasons." *See* Ark. Code Ann. § 16-123-106(c). Using federal cases as guidance because of the paucity of Arkansas cases on point, FNB argued that Flentje did not establish the necessary elements for a prima facie case and that FNB's reasons for Flentje's termination were legitimate business reasons.

Flentje responded to FNB's motion for summary judgment on February 16, 1999, and filed a brief in response, but attached no affidavits or other supporting documents. Flentje argued that FNB's reasons for terminating her employment were pretextual, and that the actual reason she was terminated was because of her pregnancy. In her brief, Flentje noted that Arkansas case law is nonexistent on this subject, and that federal law, while persuasive, is not binding. The trial court rendered its decision by letter opinion filed April 1, 1999. The trial court granted FNB's motion for summary judgment. Flentje filed her notice of appeal on April 23, 1999.

## Standard of Review

Rule 56 of the Arkansas Rules of Civil Procedure governs disposition of summary-judgment cases. The pertinent language of that rule states:

(c) *Motion and Proceedings Thereon.* The motion shall be served at least 10 days before the time fixed for the hearing. The adverse party, prior to the day of hearing, may serve opposing affidavits. The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.

\*\*\*

(e)*Form of Affidavits; Further Testimony; Defense Required.* Supporting and opposing affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein. Sworn or certified copies of all papers or parts thereof referred to in an affidavit shall be attached thereto or served therewith. The court may permit affidavits to be supplemented or opposed by depositions, answers to interrogatories, or further affidavits. When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of his pleadings, but his response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If he does not so respond, summary judgment, if appropriate, shall be entered against him.

■■ In discussing summary judgment, we recently stated in *Mashburn v. Meeker Sharkey Financial Group,* 339 Ark. 411, 5 S.W.3d 469 (1999):

In these cases, we need only decide if the granting of summary judgment was appropriate based on whether the evidentiary items presented by the moving party in support of the motion left a material question of fact unanswered. *Nixon v. H & C Elec. Co.,* 307 Ark. 154, 818 S.W.2d 251 (1991). The burden of sustaining a motion for summary judgment is always the responsibility of the moving party. *Cordes v. Outdoor Living Center, Inc.,* 301 Ark. 26, 781 S.W.2d 31 (1989). All proof submitted must be viewed in a

light most favorable to the party resisting the motion, and any doubts and inferences must be resolved against the moving party. *Lovell v. St. Paul Fire & Marine Ins. Co.*, 310 Ark. 791, 839 S.W.2d 222 (1992); *Harvison v. Charles E. Davis & Assoc.*, 310 Ark. 104, 835 S.W.2d 284 (1992); *Reagan v. City of Piggott*, 305 Ark. 77, 805 S.W.2d 636 (1991). Our rule states, and we have acknowledged, that summary judgment is proper when a claiming party fails to show that there is a genuine issue as to a material fact and when the moving party is entitled to summary judgment as a matter of law. Ark. R. Civ. P. 56(c); *Short v. Little Rock Dodge, Inc.*, 297 Ark. 104, 759 S.W.2d 553 (1988); *see also Celotex Corp. v. Catrett*, 477 U.S. 317 (1986).

. . . .

It is further well-settled that once the moving party establishes a prima facie entitlement to summary judgment by affidavits or other supporting documents or depositions, the opposing party must meet proof with proof and demonstrate the existence of a material issue of fact. *See Ford Motor Credit Co. v. Twin City Bank*, 320 Ark. 231, 895 S.W.2d 545 (1995); *Wyatt v. St. Paul Fire & Marine Ins. Co.*, 315 Ark. 547, 868 S.W.2d 505 (1994).

■ ■ We recognize a "shifting burden" in summary-judgment motions, in that while the moving party has the burden of proving that it is entitled to summary judgment, once it has done so, the burden then shifts to the nonmoving party to show that material questions of fact remain. *See Ford v. St. Paul Fire & Marine Ins. Co.*, 339 Ark. 434, 5 S.W.3d 460 (1999). When the movant makes a prima facie showing of entitlement to a summary judgment, the respondent must discard the shielding cloak of formal allegations and meet proof with proof by showing a genuine issue as to a material fact. *Hughes Western World v. Westmoor Mfg.*, 269 Ark. 300, 601 S.W.2d 826 (1980). Facts stated in an affidavit must be admissible in evidence if they are to be relied upon in granting or denying summary judgment. *Dixie Ins. Co. v. Joe Works Chevrolet, Inc.*, 298 Ark. 106, 766 S.W.2d 4 (1989).

■ ■ Summary judgment is not proper, however, "where evidence, although in no material dispute as to actuality, reveals aspects from which inconsistent hypothesis might reasonably be drawn and reasonable minds might differ." *Thomas v. Sessions*, 307 Ark. 203, 818 S.W.2d 940 (1991). The object of summary-judgment proceedings is not to try the issues, but to determine if there

are any issues to be tried, and if there is any doubt whatsoever, the motion should be denied. *Id.* (citing *Rowland v. Gastroenterology Assoc., P.A.*, 280 Ark. 278, 657 S.W.2d 536 (1983)).

■ As we further explained in *Wallace v. Broyles*, 332 Ark. 189, 961 S.W.2d 712 (1998), we will not engage in a "sufficiency of the evidence" determination. We have ceased referring to summary judgment as a drastic remedy. We now regard it simply as one of the tools in a trial court's efficiency arsenal; however, we only approve the granting of the motion when the state of the evidence as portrayed by the pleadings, affidavits, discovery responses, and admission on file is such that the nonmoving party is not entitled to a day in court, i.e., when there is not any genuine remaining issue of fact and the moving party is entitled to judgment as a matter of law. *Id.* However, when there is no material dispute as to the facts, the court will determine whether "reasonable minds" could draw "reasonable" inconsistent hypotheses to render summary judgment inappropriate. In other words, when the facts are not at issue but possible inferences therefrom are, the court will consider whether those inferences can be reasonably drawn from the undisputed facts and whether reasonable minds might differ on those hypotheses.

## I. The Arkansas Civil Rights Act

■ ■ The Arkansas Civil Rights Act, originally enacted in 1993, provides citizens of this state legal redress for civil rights violations of state constitutional or statutory provisions, hate offenses, and discrimination offenses. The Act also seeks to prevent retaliatory conduct against those seeking its protection. As the parties herein note, very few cases have been decided under this Act by Arkansas courts. In fact, as one court noted, "there is precious little case law on the subject."*Bobo v. Wolverine Worldwide, Inc.*, 13 F. Supp. 2d 887 (E.D. Ark. 1998). The Act unequivocally grants to qualified persons the right to be free from employment discrimination "because of gender." Ark. Code Ann. § 16-123-107(a)(1). The definition section of the Act also makes clear that "because of gender" includes "on account of pregnancy." Ark. Code Ann. § 16-123-102(1). Hence, should Flentje prove FNB terminated her on account of her pregnancy, she would be entitled to relief under the Act. To date, no Arkansas appellate court has addressed a pregnancy-gender discrimination case. However, Arkansas's statute spe-

cifically provides that courts may look to state and federal decisions interpreting the federal civil rights laws for persuasive authority.[1] A brief review of pertinent federal decisions is in order. Under federal law, a court can review a gender discrimination case under two alternative theories. As the court in *Stacks v. Southwestern Bell Yellow Pages, Inc.*, 996 F.2d 200 (8th Cir. 1993) summarized:

> If the plaintiff can demonstrate that an illegitimate criterion was a motivating factor in the employment decision, the burden shifting formula set out in *Price Waterhouse v. Hopkins*, 490 U.S. 228, 109 S.Ct. 1775, 104 L.Ed.2d 268 (1989), is applied. Under the *Price Waterhouse* test, once an employee has established that gender was a motivating factor in the employment decision, the burden of persuasion shifts to the defendant, which must show that "it would have made the same decision even if it had not taken the [illegitimate criterion] into account." *Beshears v. Asbill*, 930 F.2d 1348, 1353 (8th Cir. 1991). If the plaintiff is unable to produce evidence that directly reflects the use of an illegitimate criterion in the challenged decision, the employee may proceed under the now-familiar three-step analytical framework described in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). Under this test, the burden of persuasion never leaves the plaintiff, but there is a shift in the burden to come forward with evidence: (1) the plaintiff must present a prima facie case consisting of four distinct elements; (2) the defendant must rebut the prima facie case by showing nondiscriminatory reasons for termination; and (3) the plaintiff must show the reasons are pretextual.
>
> *Price Waterhouse* requires the district court to make an explicit finding whether the case is or is not a "mixed motives" case. This crucial determination establishes which party will bear the burden of persuasion and, as such, the appellate court must have before it a specific finding to review.

In *Newton v. Cadwell Laboratories*, 156 F.3d 880 (8th Cir. 1998), the Eighth Circuit Court of Appeals further noted that:

> After an employee establishes a prima facie case of gender discrimination, the employer must then advance a legitimate, nondiscriminatory reason for the employee's discharge. *See Johnson v. Baptist*

---

[1] Ark. Code Ann. § 16-123-105(c) provides: When construing this section, a court may look for guidance to state and federal decisions interpreting the federal Civil Rights Act of 1871, as amended and codified in 42 U.S.C.§ 1983, as in effect on January 1, 1993, which decisions and act shall have persuasive authority only.

*Med. Ctr.*, 97 F.3d 1070, 1072 (8th Cir. 1996). If the employer advances a legitimate, nondiscriminatory reason for the employee's discharge, the employee must present "facts which if proven at trial would permit a jury to conclude that the [employer's] proffered reason is pretextual and that intentional discrimination was the true reason for the [employer's] actions.' " *Id.* at 1072 (quoting *Krenik v. County of Le Sueur*, 47 F.3d 953, 958 (8th Cir. 1995)).

Although not binding on this court, we find this federal analysis helpful and apply it to the instant case.

## II. The Shifting Burden of Proof to Rebut FNB's Nondiscriminatory Termination Reasons

Four elements are necessary to establish a prima facie case of gender discrimination. For Flentje, these would include showing: (1) that she is within the protected class; (2) that she met applicable job qualifications; (3) that her employment was terminated; and (4) that there is some "additional showing" that pregnancy was a factor in her termination. *Thomas v. First National Bank of Wynne*, 111 F.3d 64 (8th Cir. 1997). Unquestionably, Flentje made sufficient allegations to state a prima facie case. However, she proffered no direct evidence of discriminatory intent, thus making the "mixed-motive" analysis of *Price Waterhouse* inapposite.[2] We find that the *McDonnell Douglas* test above, which uses shifting burdens, is the more applicable test on the facts presented here.[3] Because of the prima facie allegations, the burden shifted to FNB to rebut that presumption by showing that it used legitimate, nondiscriminatory factors and not unjustified reasons. To rebut the presumption, FNB cited its low profitability and the need to reduce operating costs, especially in personnel, as a legitimate, nondiscriminatory factor for terminating Flentje and her three co-workers, as well as refusing to

---

[2] In *Price Waterhouse* the plaintiff demonstrated by documentary evidence and undisputed testimony that the company included gender as a factor in its employment decision.

[3] In upholding the grant of summary judgment in *Thomas* (age discrimination case under federal law filed by the three other terminated employees mentioned in this case), the Eighth Circuit Court of Appeals also applied the *McDonnell Douglas* test as opposed to the *Price Waterhouse* mixed-motive analysis to uphold the summary judgment. The court determined that there was no "direct evidence" showing a "specific link between the [alleged] discriminatory animus and the challenged decision, sufficient to support a finding by a reasonable fact finder that an illegitimate criterion actually motivated" the termination decision by the bank.

create or refill three additional positions at the bank.[4] Regarding Flentje's termination, Watts, Flentje's supervisor, recommended terminating Flentje's employment. Watts's deposition testimony and supporting affidavit indicated that she would not have suggested Flentje's termination for her poor work performance alone, but that it was one of the factors which influenced Watts's decision to recommend Flentje's termination in the reduction-in-force evaluation. In addition, Watts indicated that she recommended Flentje for termination because her job as ATM administrator could be divided among other employees, and Flentje's position could be eliminated all together. Watts indicated that she did not recommend Flentje's termination because she was pregnant, unmarried, or because of her gender. Once FNB provided valid reasons under the statute for termination, it rebutted the presumption created by Flentje's allegations. The burden then returned to Flentje to present facts which if proven at trial would permit a jury to conclude that FNB's proffered reason was pretextual and that its actual reason was discriminatory. *Bobo, supra.*

▮ Flentje did not provide any supporting affidavits or additional evidence with her response to the motion for summary judgment. In fact, she does not argue the facts as presented in FNB's motion and supporting documents. Instead, Flentje argues that although the facts may not be in dispute, there may still be issues for trial because differing inferences may be drawn from those facts. *See Wallace, supra.* However, inferences to be drawn from undisputed facts must be more than mere possibilities; they must be such that "reasonable minds" would come to "reasonably" different hypotheses about the bank's actions. Examining the abstract and record, it is evident that no such reasonable inferences are present and that the appellant thus fails to meet "proof with proof."

▮ To show the existence of differing inferences, Flentje asserts that she testified in her deposition that her relationship with Menefee "became remote, that he ceased stopping by her office or desk to talk, and rarely looked at her after he learned of her pregnancy." The excerpt from Flentje's deposition, which FNB attached with its motion for summary judgment, contains no such

---

[4] Both federal and Arkansas law recognize that terminations based on legitimate, non discriminatory factors, such as a reduction in force, will allow an employer to avoid liability. *See* Ark. Code Ann. § 16-23-104(c).

statement. Furthermore, Flentje did not attach any depositions or affidavits of her own in support of this contention. The abstract and record contain no such deposition evidence. Consequently, this evidence is not before us, nor was it before the circuit court, and thus cannot be considered. It is well settled that arguments of counsel are not evidence. *Johnson v. State*, 326 Ark. 430, 450, 934 S.W.2d 179, 189 (1996).

■ Flentje next asserts that her relationship with Watts, "seemed to become remote." Flentje's deposition testimony in the abstract and record indicate the following:

Q: How well did you get along with Connie Watts?

A: We used to get along real well. After I became pregnant, we just didn't have much to say to each other. I had always tried to help Connie; I stayed a lot of nights and worked with her.

Q: Can you be more specific?

A: It seemed like if I had a question with the ATM, there was either someone in her office with her, or I would walk around to ask her something and she would see me and pick up her phone.

Q: Did she ever tell you she didn't want to talk to you?

A: No.

Q: Did she ever tell you that there was something about your being pregnant that she didn't like?

A: No. She told me that if it was her, she would do the same thing.

Based on this exchange, Flentje argues that the reason for the apparent remoteness could be because of the bank's financial woes, or "another reasonable person could see this change of behavior as shunning and disapproving, and evidence of animus." There is nothing in Watt's statements from which a reasonable inference of animus could be drawn. By Flentje's own admission, she did not confront Watts or ask whether there was a problem. In fact, the only "evidence" is Flentje's own perception of Watts's actions. Flentje's perception, without a supporting affidavit or other form of proof, is insufficient to support a *reasonable* inference of discriminatory intent. Self-serving statements regarding a witness's state of mind or her subjective beliefs are no more than conclusions and are

not, therefore, competent summary-judgment evidence. *Texas Division-Tranter, Inc. v. Carrozza*, 876 S.W.2d 312, (Tex. 1994).

Flentje next argues that her performance review could be viewed in two different ways — one, that it was a common tool used to measure employee performance or two, that it was used to create documentation upon which to base the discharge. Flentje also argues that she had not previously been given a performance review, and she questions whether other employees were given the same employment review. Again, however, Flentje provides no proof that she was the only employee who had been given this performance evaluation, or that this was the first time that she had ever been given this evaluation. She provides no evidence that she was the only employee placed on probation, or that pregnancy contributed to the low rating. If more discovery had been needed to produce such evidence, Rule 56(f) of the Arkansas Rules of Civil Procedure specifically provides for it within the context of a summary-judgment motion. Flentje did not file any pleadings under this rule to request more time for discovery.

Next, Flentje refers in her brief to a statement that Menefee allegedly made to Oscar Thomas, an employee who was also terminated in the reduction in force. Flentje argues in her brief that Menefee told Thomas that Menefee had "done his homework" regarding Thomas's termination. Flentje argues that this carries a negative connotation, and that a reasonable person could infer that Menefee intended to discriminate against Thomas and also against Flentje. FNB's answer admits that Menefee made the statement to Thomas. Flentje fails, however, to set forth facts connecting the statement to her termination. When opposing a summary judgment supported by affidavit, the responding party cannot rest upon the mere allegations or denials of his pleading, but must set forth specific facts showing that there is a genuine issue for trial. Ark. R. Civ. P. 56(e) also makes it clear that the facts set forth must be based upon personal knowledge and be such as would be admissible in evidence. Flentje did not present an affidavit from Thomas regarding this information, and arguments and explanations by an attorney are not proof on which a party can rely in a summary judgment. *Johnson, supra.*

Flentje next argues that while the bank presented evidence of its financial difficulties, it did not produce some documents that

Flentje requested. This failure to produce, Flentje argues, is evidence of that the bank's financial situation is not as bad as reported. As noted above, Rule 56(f) allows a party in a summary-judgment proceeding to request more time to "meet proof with proof," and it could have been used to obtain additional discovery.

Finally, Flentje asserts that Watts told her that Menefee told Watts that Flentje should not have the baby, should "get rid of it," and that she should protect herself. The record and abstract indicate that Flentje alleged this in her complaint, Menefee denied making the statement in both his affidavit and in deposition testimony, and Watts denied in her affidavit to both hearing the statement and telling the same to Flentje. Again, Flentje failed to meet proof with proof other than raising the allegation in her complaint and asking Menefee during his deposition about the statement. We hold that appellant has failed to show that there is a genuine issue as to a material fact or that reasonable differing inferences could be drawn from the undisputed facts. Therefore, the trial court did not err in granting summary judgment.

Affirmed.