Gary ZULPO, et al. *v.*
FARM BUREAU MUTUAL INSURANCE COMPANY
of ARKANSAS, INC.

CA 06-787 255 S.W.3d 494

Court of Appeals of Arkansas
Opinion delivered April 11, 2007

*Elliott & Smith, P.A.*, by: *Don R. Elliott, Jr.*; *Julia L. Busfield*, for appellant James McGrew as Special Administrator of the Estate of Jeron Dean McGrew, Deceased.

*Everett, Wales & Mitchell*, by: *Casey D. Copeland*, for appellants Gary and Christie Zulpo.

*Davis, Wright, Clark, Butt & Carithers, PLC*, by: *Sidney P. Davis, Jr.* and *Chad Gowens*, for appellee.

R OBERT J. GLADWIN, Judge. This appeal is from a summary judgment for appellee Farm Bureau Mutual Insurance Company of Arkansas, Inc., declaring that it had no obligation to defend or indemnify appellants Gary Zulpo and his wife, Christie Zulpo, in an action brought against them by appellant James McGrew, as special administrator of the estate of his deceased son, Jeron McGrew. This case presents a legal question that has not been addressed by the courts of Arkansas — whether providing full-time child-care services for compensation in one's home, on a regular basis, comes within a "business-pursuits" exclusion in a homeowner's insurance policy. We hold that it does and affirm the trial court's decision.

In March 2004, Christie Zulpo began babysitting one-year-old Jeron in her home three or more days per week, five or more hours per day, for $100 weekly. On September 2, 2004, Christie, who had an appointment, left Jeron with Gary. Tragically, Jeron died while in Gary's care. At the time of his death, the Zulpos had a homeowner's policy with appellee.

In July 2005, James sued Gary for Jeron's death in the Benton County Circuit Court. In August 2005, appellee brought this declaratory-judgment action against James and the Zulpos, alleging that the personal-liability protection afforded the Zulpos in their homeowner's policy was subject to the following exclusion: "Unless special permission for coverage is granted by endorsement, certain types of losses are not covered by *your* policy. Under Personal Liability Coverage and Medical Payments to Others Coverage, *we* do not cover . . . bodily injury or property damage arising out of *your business* pursuits[.]" The policy defined "business" as follows: "The word *'business'* means a trade or profession, or occupation, including farming whether full or part-time. It does not include newspaper delivery, caddying, lawn care nor any similar activity minors normally perform, unless the activity is *your* full-time occupation."

Appellee sought a declaration that any liability that Gary might have had to James for Jeron's death was not covered by the policy because of the business-pursuits exclusion and that it had no obligation to defend Gary in the underlying lawsuit. James filed a counterclaim for a declaration that Gary was entitled to coverage because he was not engaging in his full-time occupation at the time of Jeron's death. The Zulpos also filed a counterclaim for declaratory judgment, asserting that, because babysitting is an activity that

minors normally perform, their care of Jeron was not included within the business-pursuits exclusion.

In discovery, James stated that he and his wife paid Christie $100 for providing child-care services five days per week in her home on weekdays; that, on more than 75% of the weeks between March 15, 2004, and September 2, 2004, Christie provided child-care services for the McGrews three or more days per week; and that, on an average day, she did so for five or more hours per day. The Zulpos admitted these facts and that, in December 2003 or January 2004, Christie placed a newspaper advertisement for child care; that, on rare occasions, Gary provided child-care services for the McGrews on weekdays in his home; that, on the day Jeron died, Christie provided child care for another child, in addition to Jeron and her own child; that the Zulpos reported $1626 in business income acquired as a result of Christie's child-care services on their 2004 joint income-tax return; that Christie used flyers to advertise her child-care services; and that neither Christie nor Gary had applied for or received a license to care for children from any federal, state, or local authority.

Appellee moved for summary judgment on the basis of the business-pursuits exclusion. In response, James argued that the business-pursuits exclusion was susceptible to more than one interpretation and, therefore, should be interpreted in favor of the insured and strictly against appellee. He filed Christie's affidavit, in which she stated that, during the relevant time period, she was employed as a nurse's assistant by a local hospital from 7 a.m. to 7 p.m. every Saturday and Sunday and that Gary was employed full-time as a mechanic with J.B. Hunt Transportation, Inc. She stated that, during this time, she babysat no more than three children, one of which was her own. James also moved for summary judgment. After a hearing, the circuit court granted appellee's motion and denied James's cross-motion. James, Gary, and Christie filed timely notices of appeal.

Summary judgment should be granted only when it is clear that there are no genuine issues of material fact, and the party is entitled to judgment as a matter of law. *Smith v. Farm Bureau Mut. Ins. Co. of Ark., Inc.*, 88 Ark. App. 22, 194 S.W.3d 212 (2004). Once the moving party has established a *prima facie* entitlement to summary judgment, the opposing party must meet proof with proof and demonstrate the existence of a material issue of fact. *Id.* On review, we must determine whether there are any genuine issues of material fact. *Id.* In our review, we consider whether the

evidentiary items presented by the moving party in support of the motion leave a material fact unanswered. *Id.* All proof is viewed in the light most favorable to the party resisting the motion, with all doubts and inferences resolved against the moving party. *Id.* Although an order denying a motion for summary judgment is only an interlocutory order and is not appealable, review of certain interlocutory orders is allowed in conjunction with the appeal of a final judgment. *Id.* Thus, an order denying summary judgment may be reviewable in conjunction with an appeal of an order granting summary judgment. *See id.*

The Zulpos argue that Christie's babysitting was not a business under the policy; in the alternative, they assert that, even if it was a business, it was within the category of activities excepted from the definition of business. James argues that the circuit court erred in granting appellee's motion for summary judgment and in denying his cross-motion for summary judgment. He argues that the definition of "business" in this policy does not apply to part-time, incidental money-making activities such as babysitting. Pointing out that Gary was a full-time mechanic and that Christie was a nurse's assistant at the local hospital, he contends that coverage for the claims arising out of Jeron's death was provided by the policy as a matter of law. He stresses that the insurance policy does not define "business pursuits" and that it does not expressly exclude coverage for injuries arising out of babysitting or child care. He also argues that the exception to the exclusion clearly applied to child care, pointing out that the amount of money Christie received from it was relatively small. In the alternative, he argues that the policy language is ambiguous, leaving issues of fact to be tried.

The law regarding construction of insurance policies is well settled. *Smith v. Farm Bureau Mut. Ins. Co., supra.* Once it is determined that there is coverage, it must be determined whether the exclusionary provisions in the policy eliminate coverage. *Id.* Exclusionary endorsements must adhere to the general requirements that the insurance terms must be expressed in clear and unambiguous language. *Id.* If the language is unambiguous, we give effect to the plain language of the policy. *Id.* If the language is ambiguous, then we resort to the rules of construction. *Id.* The construction and legal effect of a written contract are matters to be determined by the court. *Id.* Provisions of an insurance policy are construed most strongly against the insurance company, which prepared it. *Id.* If the language of the policy is susceptible to two

interpretations-one favorable to the insured and one favorable to the insurer, then the interpretation most favorable to the insured must be adopted. *Id.* The fact that a term is not defined in a policy does not automatically render it ambiguous. *Curley v. Old Reliable Cas. Co.*, 85 Ark. App. 395, 155 S.W.3d 711 (2004). Language is ambiguous if there is doubt or uncertainty as to its meaning and it is fairly susceptible to more than one equally reasonable interpretation. *Ison v. Southern Farm Bureau Cas. Co.*, 93 Ark. App. 502, 221 S.W.3d 373 (2006). Usually, whether an activity is a business pursuit is a factual question. *Shelter Insurance Co. v. Hudson*, 19 Ark. App. 296, 720 S.W.2d 326 (1986); *United States Fire Ins. Co. v. Reynolds*, 11 Ark. App. 141, 667 S.W.2d 664 (1984).

Ordinarily, the question of whether the language of an insurance policy is ambiguous is one of law to be resolved by the court. *Smith v. Farm Bureau Mut. Ins. Co.*, *supra*. The construction and legal effect of written contracts are matters to be determined by the court, not by the jury, except when the meaning of the language depends upon disputed extrinsic evidence. *Id.* Thus, where the issue of ambiguity may be resolved by reviewing the language of the contract itself, it is the trial court's duty to make such a determination as a matter of law. *Id.*

The application of a business-pursuits exclusion to child-care services has not been addressed by the courts of this state. It has, however, been addressed in many other jurisdictions, and the results are not uniform. In *AMCO Insurance Co. v. Beck*, 261 Kan. 266, 929 P.2d 162 (1996), the Kansas Supreme Court looked at the amount of the teenage babysitter's compensation in relation to her total subsistence, the facts that she did not babysit in her house or advertise, and the fact that she earned below minimum wage. In finding coverage, the court explained:

> Supplemental income derived from part-time activities may satisfy the profit motive element. However, in order for the supplemental income from part-time activities to satisfy the profit motive element, the income must be *capable* of significantly supplementing one's livelihood or subsistence and contributing to one's living requirements.

261 Kan. at 278, 929 P.2d at 170. Appellants urge us to adopt the same approach because Christie earned so little from her child-care services. We need not do so in this case. The caregiver's income from child care, in relation to her entire subsistence, is only one factor among

many to be considered. Here, appellants did not prove that the disparity between Christie's earnings at the hospital and her child-care income was significant.

A case that embodies the majority view is *Stanley v. American Fire & Casualty Co.*, 361 So. 2d 1030 (Ala. 1978), in which the Alabama Supreme Court held that there was no coverage under a business-pursuits exclusion for a little girl's injuries incurred while being cared for by the insured. In reaching its decision, the court discussed the split of opinion on this issue and explained the difference between occasional babysitting jobs and "day-in, day-out child care for an indefinite period":

> The trial court ruled that in caring for children Mrs. Stanley was engaged in a "business pursuit" within the meaning of the policy exclusion. The judgment, however, lacks any reference to whether the injury arose out of "activities therein which are ordinarily incident to non-business pursuits," the exception to the exclusion. Our inquiry is directed to the exception.
>
> The above provision, both exclusion and exception have been the subject of several court decisions in other jurisdictions. The provision does not lend itself to clarity, resulting in a split of opinion over whether it is ambiguous, with the consensus being that it is poorly worded. *See Martinelli v. Security Ins. Co. of New Haven*, 490 S.W.2d 427 (Mo.App. 1972); *Crane v. State Farm and Cas. Co.*, 5 Cal. 3d 112, 95 Cal. Rptr. 513, 485 P.2d 1129 (1971); *McDougall v. Hartford Fire Ins. Co.*, 94 Idaho 220, 485 P.2d 962 (1971); and *Gulf Ins. Co. v. Tilley*, 280 F. Supp. 60, 64-65 (N.D. Ind. 1967); *Aff'd* 393 F.2d 119 (7th Cir. 1968).
>
> The *Crane* and *Tilley* cases deal with substantially the same question as we have here and conclude the activity there was within the exception to the exclusion, resulting in coverage.
>
> In *Tilley*, the exclusionary clause was held inoperative where baby care was furnished for consideration, and the baby sustained burns when she overturned a coffee percolator. The district trial court assumed that the child care was a business pursuit, but characterized insured's coffee brewing for herself and a guest as an activity not connected with baby care, thus ordinarily incident to non-business pursuits. This analysis is questionable. The baby was burned because of the condition on the premises, and the baby's own activity. The business of child care contemplates the exercising

of due care to safeguard a child of tender years from household conditions and activities; and, any activity of the insured in this regard from which injury results cannot logically be called an activity ordinarily incidental to a non-business pursuit. In other words, the activity referred to is a failure to supervise rather than making coffee for a third party. Undertaking the business relation of child care for compensation is certainly not ordinarily incident to the conduct of a household.

In *Crane* the Supreme Court of California reasoned that "indeed, it is difficult to conceive of an activity more ordinarily incident to a noncommercial pursuit than home care of children." We agree with the general ascertain [sic], but disagree with their conclusion that child care for pay is ordinarily a non-business pursuit. It should be remembered that we are not here dealing with a temporary or casual keeping of children, but rather with a more permanent arrangement for an agreed upon compensation. The Supreme Court of California in *Crane* reversed the Court of Appeals. The Court of Appeals' decision is styled the same and appears in 14 Cal. App. 3d 727, 92 Cal. Rptr. 621. It is our view that the Court of Appeals' decision is better reasoned and more properly analyzes the other cases cited than does the opinion of the Supreme Court of California. The facts are strikingly similar to the ones before us. In view of the similarity we will quote liberally from their opinion:

> "Babysitting" is an occupation in which the babysitter has the responsibility of keeping her infant charges entertained and protected from harm and even mischief. (*Tropical Coach Lines, Inc. v. King* (1962 Fla. Sup. Ct.) 147 So. 2d 318, 319.)

> The term "babysitting" perhaps is inaptly used to describe the contract for day care for children involved here. In ordinary parlance, the "babysitter" is one employed as a matter of convenience by parents to stay with a child or children, so that they may for a few hours seek their pleasure, or tend to affairs external to the home. This differs from day-in, day-out child care for an indefinite period, as here.

> "Business" in its broad sense embraces anything about which a person may be busy, and in its usual sense, signifies an undertaking or calling for gain, profit, advantage or livelihood. While "business pursuit" in some contexts is synonymous with "business," it more accurately denotes a continued, extended or prolonged course of business or occupation. Child care for

compensation as evidenced in this case was much more than a casual accommodation, and was properly found to be a "business pursuit" under the terms of the policy exclusion. (*Mansfield v. Hyde* (1952) 112 Cal. App. 2d 133, 137-138, 245 P.2d 577; *Long v. City of Anaheim* (1967) 255 Cal. App. 2d 191, 197, 63 Cal. Rptr. 56; *cf. Dorrell v. Norida Land & Timber Co.* (1933) 53 Idaho 793, 27 P.2d 960, 963, *reviewing definitions; Fadden v. Cambridge Mutual Fire Insurance Co.* (Sup. Ct. 1966) 51 Misc. 2d 858, 274 N.Y.S.2d 235, 241; *Home Insurance Company v. Aurigemma* (Sup. Ct. 1965) 45 Misc. 2d 875, 257 N.Y.S.2d 980, 985. These New York trial court cases involve the same exclusionary clause here considered.)

It has been held in a variety of contexts that a single day's act, or single transaction does not qualify as a business. We need not explore the ramifications of these definitions, in view of the continuity of the services here contracted for and performed, according to the evidence. The present case does not involve casual babysitting, a temporary arrangement for an hour, a day or an evening, for the convenience of parents. It seems clear that while an individual instance might involve a business arrangement, such would lack the continuity of a "business pursuit." 92 Cal. Rptr. at 622.

We are in accord with the several authorities that the exclusionary provision is poorly worded and could have been written with more specificity. Yet when applied to these facts we do not find it ambiguous.

Two questions become pertinent. First, did the injury arise out of a business pursuit? We hold that it did. Second, did the injury arise out of an activity which is ordinarily incident to a non-business pursuit? The activity referred to is not preparing lunch, which would ordinarily be incident to a non-business pursuit, but rather to the failure to properly supervise a young child. Supervising children on a regular basis for compensation is ordinarily a business pursuit.

We are therefore of the opinion that the business exclusion is applicable and the judgment of the trial court is correct.

361 So. 2d at 1032-33.

 Although there have been courts that continue to find coverage in this situation, *see Smith v. Allstate Ins., Co.*, 241 Va.

477, 403 S.E.2d 696 (1991); *U. Servs. Auto. Ass'n v. Lucas*, 200 Ga. App. 383, 408 S.E.2d 171 (1991), the *Stanley* rationale has been followed in the majority of subsequent decisions. *See Moncivais v. Farm Bureau Mut. Ins. Co.*, 430 N.W.2d 438 (Iowa 1988). We believe that the rationale expressed in *Stanley* is the better-reasoned approach. First, did the injury arise out of a business pursuit? We hold that it did. Christie advertised her services for child care in the newspaper. She did not go to the child's home to care for him in his parents' absence. Instead, she provided the facility, her own home, for her services as caregiver. She offered child care on a five-day-a-week basis in exchange for $100 per week. Christie was, therefore, involved in a business pursuit. Second, could Christie's child-care services be considered "newspaper delivery, caddying, lawn care [or] any similar activity minors normally perform..."? We hold that they could not. In our view, the exception to the exclusion for activities that minors normally perform cannot reasonably be construed as including full-time child-care services, for compensation in one's home, on a regular basis, by an adult caregiver who solicits clients. The trial court, therefore, did not err in awarding summary judgment to appellee.

Affirmed.

BIRD and VAUGHT, JJ., agree.