James McGREW as Special Administrator of the Estate of
Jeron Dean McGrew, Deceased; and Gary F. Zulpo and
Christie Zulpo *v.* FARM BUREAU MUTUAL
INSURANCE COMPANY of Arkansas, Inc.

07-421                                                    268 S.W.3d 890

Supreme Court of Arkansas
Opinion delivered November 29, 2007

[Rehearing denied January 17, 2008.]

*Elliott & Smith, P.A.*, by: *Don R. Elliott, Jr.; Julia L. Busfield*, for appellant.

*Davis, Wright, Clark, Butt & Carithers, PLC*, by: *Sidney P. Davis* and *Chad Gowens*, for appellee.

ANNABELLE CLINTON IMBER, Justice. The instant case arises out of a dispute as to whether the homeowner's insurance policy that Appellants Gary and Christie Zulpo purchased from Appellee Farm Bureau Insurance Company of Arkansas, Inc., (Farm Bureau) provides coverage for the death of Appellant James McGrew's son, Jeron. The Benton County Circuit Court granted summary judgment in favor of Farm Bureau, finding no coverage under the policy, and McGrew and the Zulpos filed this appeal.

In 2004, Christie Zulpo worked two twelve-hour shifts each weekend as a nurse's assistant at the Mercy Medical Center. The other five days of the week, Christie stayed home with her young child. During the months of December 2003 and January 2004, Christie placed the following advertisement in *The Morning News*:

> STAY AT home mom looking for responsible parents in need of child care. Good rates, clean environment. Lowell area [phone number].

As a result of the advertisement, Christie began caring for Jeron McGrew, a one-year-old child, on March 15, 2004. Jeron's parents agreed to pay Christie $100 per week, and for the next six months, she continuously provided childcare to Jeron for at least three days a week and five hours a day. In 2004, the Zulpos reported $1,626 in business income from Christie's childcare work on their joint tax return.

On September 2, 2004, Christie had a doctor's appointment, and she left the children in Gary's care. During the time while Christie was gone, a heavy object fell on Jeron, causing compression chest trauma and the rupture of the right atrium of his heart. Jeron later died from his injuries.

James McGrew, as special administrator of Jeron's estate, filed a negligence action against Gary. Gary then filed a claim with Farm Bureau under his homeowner's insurance policy, and Farm Bureau filed a complaint for declaratory judgment, arguing that the policy did not cover Jeron's accident. Farm Bureau argued that the policy specifically excluded coverage for business pursuits of an insured, and Christie's childcare services were a business pursuit.

Under the policy, bodily injuries, including death, were generally covered, but the policy contained the following exclusion:

> Unless special permission for coverage is granted by endorsement, certain types of losses are not covered by your policy . . . . bodily injury or property damage arising out of your business pursuits.

Business was defined in the policy as,

> [A] trade or profession, or occupation, including farming whether full or part-time. It does not include newspaper delivery, caddying, lawn care, nor any similar activity minors normally perform, unless the activity is **your** full-time occupation.

"You" and "your" were defined as "the policyholder first named in the policy declarations and his or her spouse . . . . 'You' and 'your' also includes dependent relatives if they are living on the residence premises."

Farm Bureau filed a motion for summary judgment, arguing that coverage was clearly excluded under the policy. The Zulpos, however, contended that the policy provisions were ambiguous. The circuit court granted Farm Bureau's motion, finding no ambiguity in the policy provisions. The Zulpos and James McGrew appealed the circuit court's decision to the Arkansas Court of Appeals. The court of appeals affirmed, and Appellants filed a petition for review with this court. When this court grants a petition for review from a decision of the court of appeals, we review the appeal as if it had originally been filed in this court. *See Hollandsworth v. Knyzewski*, 353 Ark. 470, 109 S.W.3d 653 (2003).

Under our rules of procedure, a circuit court shall grant a party's motion for summary judgment if "the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, shows that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law on the issues specifically set forth in the motion." Ark. R. Civ. P. 56(c)(2) (2007). The burden of sustaining a motion for summary judgment is always the responsibility of the moving party. *Flentje v. First Nat'l Bank of Wynne*, 340 Ark. 563, 11 S.W.3d 531 (2000). Once the moving party establishes a prima facie entitlement to summary judgment by affidavits or other supporting documents or depositions, the opposing party must meet proof with proof and demonstrate the existence of a material issue of fact. *Id.*

All proof submitted must be viewed in a light most favorable to the party resisting the motion. *Id.* On review, this court must determine whether the evidence presented by the moving party in support of the motion left a material question of fact unanswered. *Id.* A fact issue exists, even if the facts are not in dispute, if the facts may result in differing conclusions as to whether the moving party is entitled to judgment as a matter of law. *Ultracuts Ltd. v. Wal-Mart Stores, Inc.*, 343 Ark. 224, 33 S.W.3d 128 (2000).

For their first argument on appeal, McGrew and the Zulpos assert that it is clear from the language of the policy that Christie's childcare activities do not constitute a "business pursuit." Appellants argue that childcare, or babysitting, is an activity normally performed by minors, and, because the policy definition of "business" does not include activities "minors normally perform," Christie's childcare activities clearly are not a "business pursuit." They assert that the term "business" under the policy means the insured's "trade, profession or occupation," and Christie's childcare activities are not her trade, profession, or occupation, inasmuch as her occupation is nursing. Additionally, Appellants argue that even if Christie's childcare activities are considered a business, the activities are not her full-time occupation; rather, her principal occupation is being a nurse's assistant. In the alternative, Appellants argue that the policy language is ambiguous, and, therefore it should be construed against Farm Bureau.

Farm Bureau, on the other hand, insists that the business-pursuits exclusion precludes coverage under the policy. It asserts on appeal that Christie's activities fit the policy's basic definition of business because full-time, continuous childcare is not an activity minors would normally perform. Specifically, Christie's activities were unlike that of a minor due to the fact that she advertised her services, kept very young children on a day-to-day basis, and kept children in her home during the hours a minor would normally be in school. In essence, Farm Bureau claims that Christie's childcare activities constituted her full-time occupation.

Our law regarding the construction of insurance contracts is well settled. *Elam v. First Unum Life Ins. Co.*, 346 Ark. 291, 57 S.W.3d 165 (2001). The language in an insurance policy is to be construed in its plain, ordinary, and popular sense. *Norris v. State Farm Fire & Casualty Co.*, 341 Ark. 360, 16 S.W.3d 242 (2000). If the language of the policy is unambiguous, we will give effect to the plain language of the policy without resorting to the rules of construction. *Elam v. First Unum Life Ins. Co.*, *supra.* Once it is

determined that coverage exists, it then must be determined whether the exclusionary language within the policy eliminates coverage. *Norris v. State Farm Fire & Cas. Co., supra.* Exclusionary endorsements must adhere to the general requirements that the insurance terms must be expressed in clear and unambiguous language. *Id.* If a provision is unambiguous, and only one reasonable interpretation is possible, this court will give effect to the plain language of the policy without resorting to the rules of construction. *Id.* If, however, the policy language is ambiguous, and thus susceptible to more than one reasonable interpretation, we will construe the policy liberally in favor of the insured and strictly against the insurer. *Id.*

In order for Christie's activities to be excluded from coverage, the activities must constitute a "business pursuit," and to make that determination, this court must consider the provision in the policy defining business. As quoted above, "business" was defined by the policy as: "[A] trade or profession, or occupation, including farming whether full or part-time. It does not include newspaper delivery, caddying, lawn care, nor any similar activity minors normally perform, unless the activity is **your** full-time occupation." Thus, in reviewing the definition of "business," this court must consider three things: (1) whether Christie's childcare activities met the general definition for business, (2) whether the activities are those normally performed by minors, and (3) whether the activities constitute Christie's full-time occupation.

Under the policy, a "business" is generally defined as a trade, profession, or occupation. A "trade" is defined in Webster's Dictionary as "the business practices or the work in which one engages regularly." *Webster's Third International Dictionary*, 2421 (2002). Likewise, an occupation is "a craft, trade, profession or other means of earning a living." *Id.* at 1561. A profession is defined as "a calling requiring specialized knowledge and often long and intensive preparation including instruction in skills and methods . . . ." *Id.* at 1811. While under a plain reading of the terms defined above, one might agree that childcare is not Christie's profession because she has not received specialized training in the field, one would also conclude that Christie's childcare activities constitute either a trade or an occupation. Childcare services were certainly the work in which Christie engaged regularly. She watched children three to five days a week, every week, in her home. Additionally, Christie engaged in the childcare activities as a means of earning a living.

■ The next question to be answered, however, is whether childcare activities are normally performed by minors. Farm Bureau argues that the language regarding activities normally performed by minors is unambiguous because it indicates activities normally performed by minors, which were actually being performed by a minor at the time of the accident. Appellants contend that the policy language is ambiguous as written because it only indicates that activities normally performed by minors are excluded from the definition of business, but does not indicate whether the activities must be performed by minors to be excluded. We agree with Appellants and conclude that the phrase "activities minors normally perform" is ambiguous. A reasonable person might determine that the policy covered minors, as well as adults, who are caddying or performing newspaper delivery, lawn care, or any other similar activity minors normally perform, such as childcare or babysitting. Because the provision is ambiguous, we must construe it against Farm Bureau.

The question of whether Christie's childcare activities were covered by the policy is not conclusively answered by our decision concerning the ambiguity of the phrase "any similar activity minors normally perform." The exclusion of activities normally performed by minors from the definition of business was further qualified by the phrase "unless the activity is **your** full time occupation." In that regard, Farm Bureau points out that Christie's childcare activities were full-time, whereas a minor would normally perform such activities on a part-time basis. Thus, issues remain concerning what constitutes a "full time occupation" under the policy, and whether Christie's childcare activities are a full-time occupation. Although the policy did not specifically define the term "full time occupation," the parties offered evidence in support of varying definitions to the circuit court.

Ordinarily, the question of whether the language of an insurance policy is ambiguous is one of law to be resolved by the court. *Elam v. First Unum Life Ins. Co., supra.* Where, however, parol evidence has been admitted to explain the meaning of the language, the determination becomes one of fact for the jury to determine. *Id.* Our case law demonstrates that where there is a dispute as to the meaning of an insurance contract term or provision, the circuit court must initially perform the role of gatekeeper, determining first whether the dispute may be resolved by looking solely to the contract or whether the parties rely on disputed extrinsic evidence to support their proposed interpreta-

tion. *See id.* Thus, where the issue of ambiguity may be resolved by reviewing the language of the contract itself, it is the circuit court's duty to make such determination as a matter of law. *Id.* However, when the parties go beyond the contract and submit disputed extrinsic evidence to support their proffered definitions of the term, this is a question of fact for the jury. *Id.* In the latter situation, summary judgment is not proper. *Id.*

A full-time occupation could be defined various ways, and the parties here presented evidence extrinsic to the policy, which could support several definitions. For instance, someone's full-time occupation could be that person's primary occupation, or calling. On the other hand, a full-time occupation might be defined by the number of hours worked at one job as compared to other jobs, or the amount of income derived from the work. In the instant case, the parties presented evidence that Christie considered her occupation to be nursing, but she spent just as many, and sometimes more, hours a week giving childcare as she did working as a nurse's assistant. Yet, the Zulpos' tax returns indicated that much less of Christie's income was attributed to her childcare services than her nursing job. Given the extrinsic evidence presented for the purpose of determining Christie's full-time occupation under the policy, the circuit court erred when it resolved the issue as a matter of law and granted summary judgment in favor of Farm Bureau. Accordingly, we reverse the circuit court's judgment and remand for the jury to determine whether childcare was Christie's full-time occupation. Such a question of fact must be determined by the jury in order for the circuit court to resolve the coverage question under the policy. *See Elam v. First Unum Life Ins. Co., supra; Smith v. Prudential Prop. & Cas. Ins. Co.*, 340 Ark. 335, 10 S.W.3d 846 (2000); *Minerva Enter., Inc. v. Bituminous Cas. Corp.*, 312 Ark. 128, 851 S.W.2d 403 (1993).