SLIP OPINION

# ARKANSAS COURT OF APPEALS

DIVISION IV
No. CV–15–55

| | |
|---|---|
| INDIA BISHOP<br><br>APPELLANT<br><br>V.<br><br><br>FARM BUREAU MUTUAL INSURANCE COMPANY OF ARKANSAS, INC.<br><br>APPELLEE | **Opinion Delivered** January 20, 2016<br><br>APPEAL FROM THE PULASKI COUNTY CIRCUIT COURT, THIRD DIVISION [NO. 60-CV-14-38]<br><br>HONORABLE CATHLEEN V. COMPTON, JUDGE<br><br>REVERSED AND REMANDED |

**BART F. VIRDEN, Judge**

India Bishop appeals the Pulaski County Circuit Court's order awarding summary judgment to Farm Bureau Insurance Company of Arkansas, Inc. We reverse and remand for the entry of judgment consistent with this opinion.

## I. *Facts*

On March 11, 2011, Ronnie Wardlaw decided to burn the grass in a ditch located near the northwest corner of the 175-acre property owned by his ex-wife, India Bishop. Wardlaw lost control of the fire, and it spread onto neighboring property owned by Charlotte Hardin. The fire destroyed Bishop's commercial property, which Bishop rented to a tenant who operated a business (Lavender Bar) in the building. The fire also destroyed a building owned by Hardin and rented by Troy Guthrey for his business, American Tire & Truck.[1] At the time

---

[1] Wardlaw also lived on Bishop's property in a trailer home she owned, which was not

of the fire, Bishop held a current homeowner's insurance policy issued by Farm Bureau Mutual Insurance Company of Arkansas, Inc. ("Farm Bureau"). The declaration page of the policy listed 310 Lavender Lane in Pine Bluff, Bishop's home, as the insured property.

Hardin and Guthrey filed a negligence suit against Bishop and Wardlaw. Farm Bureau subsequently filed a complaint for declaratory judgment against Bishop, Hardin, Guthrey, and Wardlaw. In the declaratory action, Farm Bureau stated that the policy did not cover damage stemming from any incident that occurred away from Bishop's residence premises, and that the policy's personal-liability coverage was specifically limited to incidents occurring within five acres of the residence premises listed on the declaration page; therefore, Farm Bureau requested that the circuit court declare that it owed no duty under the insurance policy to defend or indemnify Bishop or Wardlaw for any losses claimed by Hardin and Guthrey.

Bishop filed a separate answer in which she requested that the declaratory action be dismissed. In her answer, Bishop stated that the policy contained ambiguous terms and that the ambiguity precluded Farm Bureau from denying coverage. Farm Bureau followed up its declaratory action by filing a motion for summary judgment against Bishop on July 30, 2014. Bishop filed her response to the motion for summary judgment on August 19, 2014. Bishop also requested that the court grant summary judgment in her favor.

A hearing on the matter was held on October 16, 2014. At the hearing, Farm Bureau argued that the policy did not cover the fire damage because the fire began at a location on Bishop's property that was not covered by the policy. Farm Bureau also argued that even if

damaged in the fire.

the property where the fire started was covered by the policy, the fire began as the result of a business pursuit and therefore was excluded from coverage.

In response, Bishop argued that the policy coverage was transitory, meaning that the policy covered incidents that occurred away from the insured property. Bishop also argued that the method of determining the parameters of the five-acre restriction was undefined; therefore, the policy contained an ambiguous term, and the clause should be construed in her favor. Bishop also argued that the business-pursuits exception was another source of ambiguity within the policy and should also be construed in her favor.

In an order dated October 21, 2014, the circuit court granted summary judgment to Farm Bureau. In its order, the circuit court found that Farm Bureau owed no duty to defend or indemnify Bishop or Wardlaw for damage to Hardin and Guthrey's property. Bishop filed a timely notice of appeal.[2]

On appeal, Bishop argues that the circuit court erred in granting summary judgment to Farm Bureau where genuine issues of material fact existed concerning its duty to indemnify and/or defend Bishop against suit. Bishop also argues that the ambiguous terms in the policy should be construed in her favor and that the circuit court should therefore have awarded summary judgment to her.

We agree that the circuit court was correct in finding that there was no material fact issue and that the case was properly decided by summary judgment; however, we also hold

---

[2] Hardin and Guthrey also filed a notice of appeal. On January 28, 2015, Hardin's attorneys requested to be removed as the attorneys of record, and the request was granted. Neither Hardin nor Guthrey has pursued an appeal related to this case.

that the definitions of "residence premises" and "business pursuit" are ambiguous and that the ambiguity in the insurance policy should have been resolved in favor of Bishop. We therefore conclude that the circuit court erred in awarding summary judgment in favor of Farm Bureau. We hold that the circuit court erred as a matter of law when it found that Farm Bureau owed no duty to defend or indemnify Bishop for the damage caused to Hardin and Guthrey's property, and we reverse and remand for an entry of judgment in favor of Bishop.

## II. *Standard of Review and Applicable Law*

### A. Summary Judgment

The law is well settled that summary judgment is to be granted by a circuit court only when it is clear that there are no genuine issues of material fact to be litigated, and the party is entitled to judgment as a matter of law. *Harrisburg Sch. Dist. No. 6 v. Neal*, 2011 Ark. 233, 381 S.W.3d 811. Once the moving party has established a prima facie entitlement to summary judgment, the opposing party must meet proof with proof and demonstrate the existence of a material issue of fact. *Id*.

On appellate review, we determine if summary judgment was appropriate based on whether the evidentiary items presented by the moving party in support of the motion leave a material fact unanswered. *Campbell v. Asbury Auto.,* Inc., 2011 Ark. 157, 381 S.W.3d 21. We view the evidence in the light most favorable to the party against whom the motion was filed, resolving all doubts and inferences against the moving party. *Id*. Our review focuses not only on the pleadings, but also on the affidavits and documents filed by the parties. *Cent. Okla. Pipeline, Inc. v. Hawk Field Servs., LLC*, 2012 Ark. 157, 400 S.W.3d 701.

We agree with the circuit court's determination that neither party demonstrated a genuine issue of material fact. Both parties agree that Wardlaw started the fire on Bishop's property, and they agree as to the location where the fire began. Farm Bureau and Bishop agree that Wardlaw started the fire as a means of clearing a ditch on Bishop's land. Both parties attest to the fact that Wardlaw was a tenant of Bishop. With the underlying facts relating to the case undisputed, the circuit court did not err in finding that summary judgment was proper; however, because of the ambiguous definitions of "residence premises" and "business pursuit" in the insurance policy, we hold that the circuit court erred in finding that summary judgment should be awarded in favor of Farm Bureau. Further, for the reasons set out below, we hold the court should have granted Bishop's motion for summary judgment.

## B. Ambiguous Definitions

The fact that a term is not defined in a policy does not automatically render it ambiguous. *Zulpo v. Farm Bur. Mut. Ins. Co. of Ark.*, 98 Ark. App. 320, 323, 255 S.W.3d 494, 497 (2007). Language is ambiguous if there is doubt or uncertainty as to its meaning, and it is fairly susceptible to more than one equally reasonable interpretation. *Id.* Ordinarily, the question of whether the language of an insurance policy is ambiguous is one of law to be resolved by the court. *Id.* The construction and legal effect of written contracts are matters to be determined by the court, not by the jury, except when the meaning of the language depends upon disputed extrinsic evidence. *Id.* Thus, where the issue of ambiguity may be resolved by reviewing the language of the contract itself, it is the circuit court's duty to make such a determination as a matter of law. *Id.* Provisions of an insurance policy are construed most strongly against the insurance company, which prepared it. *Id.* If the language of the

5

policy is susceptible to two interpretations-one favorable to the insured and one favorable to

the insurer-then the interpretation most favorable to the insured must be adopted. *Id.*

### 1. *"Residence premises"*

Section II of the policy, which covers personal liability, defines "residence premises"

as: "any premises shown on the Declaration page as an insured premises. This includes vacant

land, not to exceed five acres."

The policy describes Bishop's personal liability coverage:

> [W]e will pay all sums . . . arising out of any loss which you become legally obligated
> to pay as damages because of . . . property damage covered by this policy. If a claim
> is made or suit is brought against you for damages because of . . . property damage
> covered by this policy, we will defend you at our expense, using lawyers of our choice.

The exclusions to Bishop's personal liability coverage are also described in the policy:

> [C]ertain types of losses are not covered by your policy.  Under Personal Liability
> Coverage, . . . we do not cover: . . . 3. . . . property damage arising out of your
> business pursuits. 4. . . . property damage arising out of any residence premises owned,
> rented or controlled by you which is not an insured residence premises specified on
> your policy Declaration.

Though the definition of "residence premises" specifies that five acres of vacant land

is to be included in the policy coverage, the policy does not direct how the five acres is to be

measured. Thus, there is an ambiguity inherent in the personal-liability coverage provision

concerning whether or not the fire started within five acres of the residence premises covered

in Bishop's policy. We follow the general rule that because the policy language is ambiguous,

and thus susceptible to more than one reasonable interpretation, we will construe the policy

liberally in favor of the insured and strictly against the insurer. *See  Norris v. State Farm Fire &*

6

SLIP OPINION

*Cas. Co.*, 341 Ark. 360, 16 S.W.3d 242 (2000). No disputed extrinsic evidence was offered in connection with the motion for summary judgment in the present case. Applying the general rule, and construing the ambiguous definitions in Bishop's favor, we conclude that she was entitled to personal-liability coverage under the terms of the policy.

## 2. *"Business pursuits"*

Once it is determined that coverage exists, it then must be determined whether the exclusionary language within the policy eliminates coverage. *McGrew v. Farm Bur. Mut. Ins. Co. of Ark.*, 371 Ark. 567, 570–71, 268 S.W.3d 890, 895 (2007). Bishop's policy provides that Farm Bureau will not pay for property damage that arises out of "business pursuits." Exclusionary endorsements must be expressed in clear and unambiguous language. *Id.* If a provision is unambiguous, and only one reasonable interpretation is possible, this court will give effect to the plain language of the policy without resorting to the rules of construction. *Id.* If, however, the policy language is ambiguous, and thus susceptible to more than one reasonable interpretation, we will construe the policy liberally in favor of the insured and strictly against the insurer. *Id.*

Bishop's policy provides that Farm Bureau will not pay for property damage that arises out of "business pursuits." The compound term "business pursuits" is not defined by the policy. The policy defines "business" as "a trade or profession or occupation, including farming whether full or part-time. It does not include part-time or seasonal activities that are performed by minors." Landlord-tenant agreements are not specifically identified within this definition. Moreover, the term "pursuit" is not defined within the policy. For the plain

meaning of the word "pursuit," we look to *Webster's Third International Dictionary*, at 1848 (2002), which defines it as "an activity that one engages in as a vocation, profession, or avocation[.]"

Thus, in order for Bishop's activities to be excluded from coverage, her activities must have constituted a business pursuit. It is undisputed that Bishop maintained landlord–tenant relationships, including one with Wardlaw. It is undisputed that Wardlaw engaged in burning vegetation on Bishop's land. This court must consider whether these undisputed facts fall within the exclusionary language; put more simply, does Bishop's landlord-tenant status constitute a business pursuit within the policy language, and were Wardlaw's actions of burning vegetation on Bishop's land pursuant to Bishop's profession, trade or occupation? We cannot discern from the definition presented in the policy whether property rental is an activity to be included in the definition of business. Neither can we discern whether Wardlaw's burning of vegetation was related to or undertaken in the pursuit of any landlord–tenant relationship. Because the definition of the term "business" is so vague as to render it ambiguous, we hold that the exclusion should have been construed in favor of Bishop.

### III. *Conclusion*

The order of the circuit court is reversed, and we remand for entry of judgment in favor of India Bishop.

Reversed and remanded.

HARRISON and WHITEAKER, JJ., agree.

*Barber Law Firm PLCC*, by: *Michael L. Alexander*, for appellant.

Cite as 2016 Ark. App. 27

*Turner Law Firm, P.A.*, by: *Andy L. Turner* and *Ben C. Hall*, for appellee.