Cite as 2023 Ark. 74

# SUPREME COURT OF ARKANSAS
**No.** CV–22–690

| | |
|---|---|
| MICHAEL W. GATES AND SUSAN J. GATES<br><br>APPELLANTS<br><br>V.<br><br>LARRY WALTHER, SECRETARY, DEPARTMENT OF FINANCE AND ADMINISTRATION OF THE STATE OF ARKANSAS<br><br>APPELLEE | **Opinion Delivered:** May 4, 2023<br><br>APPEAL FROM THE GARLAND COUNTY CIRCUIT COURT [NO. 26CV-21-100]<br><br>HONORABLE GARY M. ARNOLD, JUDGE<br><br><u>REVERSED AND REMANDED</u>. |

**RHONDA K. WOOD, Associate Justice**

Michael and Susan Gates appeal the circuit court's order granting summary judgment to the Department of Finance and Administration. The order upheld DFA's amended and corrected notices of final assessment of the Gateses' tax burden for 2015, 2016, and 2017. The Gateses argue that DFA failed to provide sufficient evidence to meet its prima facie burden of proof for summary judgment. We agree and reverse and remand.

## I. *Relevant Facts*

The Gateses failed to file tax returns or pay individual and corporate state taxes for years 2012–2017. Mr. Gates pleaded no contest to one criminal count for failure to file a tax return or pay taxes. As a condition of his plea, he was sentenced to six years' probation, ordered to pay $74,789.80 in restitution, and ordered to file tax returns for the years 2015–

2017. DFA audited those returns to determine the Gateses' tax liability, penalty, and interest for those years. DFA's audit initially assessed the Gateses' tax liability at $50,519, plus penalties and interest.[1] The Gateses protested this initial assessment, claiming that DFA incorrectly taxed legitimate business expenses associated with their S corporation, Stonebridge Collection, Inc. In response to the Gateses' request, DFA provided them with a copy of the schedule of adjustments prepared during the audit.

After this initial production, the parties communicated poorly. The Gateses continued to claim DFA was not recognizing some legitimate business expenses, but they conceded that some deducted expenses were personal. For example, the Gateses admitted to thousands of dollars in personal expenses to Amway, Cranford's Village Supermarket, restaurants, Wal-Mart, and Entergy. These admitted personal expenses were listed on the profit-and-loss statement of the Gateses' business. DFA, on the other hand, in deposition testimony, could not define what constituted a legitimate business expense when asked to explain why it had excluded some seemingly business-related expenses.

DFA continued to send the Gateses a series of tax-assessment letters reflecting differing amounts of their tax liability. For example, the following chart shows four written communications from DFA[2] to the Gateses in August 2020 regarding DFA's fluctuating calculation of the Gateses' tax liability:

---

[1]The tax-liability amounts referred to throughout this opinion do not include penalties and interest. The Gateses do not contest that, once their tax liability is determined, statutory penalties and interest will apply.

[2]DFA titled each document differently; therefore, the date best identifies each document.

|  | 2015 | 2016 | 2017 | Total Tax Liability |
|---|---|---|---|---|
| August 13, 2020 Summary Letter | $8,916 | $6,477 | $6,284 | $21,677 |
| August 14, 2020 Assessment | $14,948 | $10,785 | $6,284 | $32,017 |
| August 24, 2020 Notice of Final Assessment | $23,864 | $17,262 | $13,061 | $54,187 |
| August 27, 2020 Letter | $21,826 | $14,951 | $10,544 | $47,321 |

When the parties reached an impasse, the Gateses sued DFA in circuit court. They challenged the amended and corrected notices of final assessment. After discovery, DFA moved for summary judgment, and in response, the Gateses filed a cross-motion for summary judgment. After hearing these motions, the circuit court entered an order striking several of the Gateses' exhibits to their cross-motion for summary judgment, granting DFA's summary-judgment motion, and finding that the amended and corrected notices of final assessment were sustained. The Gateses appealed.

II.     *Analysis*

Summary judgment is proper when a claiming party fails to show that there is a genuine issue as to material fact. Ark. R. Civ. P. 56(c); *Flentje v. First Nat'l Bank of Wynne*, 340 Ark. 563, 569, 11 S.W.3d 531, 535–36 (2000) (citing *Mashburn v. Meeker Sharkey Fin. Grp.*, 339 Ark. 411, 5 S.W.3d 469 (1999)). The burden is on the moving party—here, DFA. *Flentje*, 340 Ark. at 568, 11 S.W.3d at 535. In summary-judgment cases, we decide whether the evidentiary items presented by the moving party left a material question of fact unanswered. *Id*. Once the moving party establishes a prima facie entitlement to summary

3

judgment, the burden shifts to the defendant to meet proof with proof and demonstrate the existence of a material issue of fact. *Flentje*, 340 Ark. at 569, 11 S.W.3d at 536.

Summary judgment is not proper "where evidence although not in material dispute as to actuality, reveals aspects from which inconsistent hypothes[e]s might reasonably be drawn and reasonable minds might differ." *Id*. On review of a grant of summary judgment, we examine the evidentiary items presented and determine whether the circuit court correctly ruled that those items left all material facts undisputed. *Wright v. Compton, Prewett, Thomas & Hickey, P.A.*, 315 Ark. 213, 866 S.W.2d 387 (1993).

In tax cases, DFA carries the initial burden of proving the imposition of the tax by a preponderance of the evidence. "The agency claiming the right to collect a tax bears the burden of proving that the tax law applied to the item sought to be taxed." *Leathers v. A&B Dirt Movers, Inc.*, 311 Ark. 320, 844 S.W.2d 314 (1992). Thus, to meet its prima facie burden, DFA must prove the Gateses' net taxable income and resulting tax liability for 2015–2017. Once that occurs, the Gateses will have the burden of proving any deductions. *Id*.

The circuit court found that DFA met its burden of proving "earned income subject to Arkansas income tax." The circuit court supported this based on: (1) the Gateses' filed tax returns; (2) DFA's tax assessments arising from disallowed income tax deductions; and (3) income showed on the Gateses' 1099 forms, which showed payments to Mr. Gates and Stonebridge by sources other than an employer.

On appeal, the Gateses argue that the income tax returns and 1099s were not prima facie proof of DFA's calculation of the Gateses' net taxable income. We agree because the

math in the record does not add up. It is undisputed that the Gateses had *some* taxable income based on their filed tax returns. But we hold that a material dispute of fact exists regarding *the amounts* of their taxable income for 2015–2017.

After reviewing the Gateses' income tax returns and 1099s, DFA computed net taxable incomes that were greater than what the Gateses had reported. DFA could be correct, but its figures throughout the audit were moving targets, and it never revealed its math to the Gateses, the circuit court, or this court on appeal. While DFA continues to argue that it met its burden of proving "that the income attributed to the Gates[es], both according to their income tax returns and the 1099s, was correct," the record does not reflect this. Based on the record before us, the net taxable income DFA calculated was greater than the amounts the Gateses reported, plus their 1099 income. DFA offered no other evidentiary support regarding how it calculated the increase in taxable income. While DFA argued that its adjustments were "the result of disallowed business deductions and the addition of *some* income shown on 1099 forms," it did not show which 1099 income it included or which business deductions it excluded. (Emphasis added.) The Gateses admittedly ran many personal expenses through their business, but the burden falls first on DFA to prove the initial taxable income amount and show how it arrived at that number.

The circuit court's order supports that material-fact issues existed. The circuit court sustained DFA's "amended and corrected notice of final assessment." One would have to assume that the order is referencing the August 24, 2020 letter titled "notice of final assessment." But that letter wasn't attached to DFA's motion for summary judgment, and it does not contain the net taxable income DFA calculated, which is DFA's burden. It only

5

reported the Gateses' tax liabilities. And after that "final" letter was sent, an assistant revenue commissioner sent another letter with different figures that "reflected the corrected amounts due." Consequently, even after the circuit court's order, we are left to wonder: how much money did the circuit court conclude the Gateses owed DFA?

Considering this evidence, DFA did not meet its prima facie burden of proving *the total amounts* of taxable income that it had calculated for 2015, 2016, and 2017. Because DFA's motion for summary judgment lacked this prima facie evidence, we conclude that DFA did not meet its burden of proof at the summary-judgment stage of the proceedings. Therefore, the circuit court erred in granting DFA's motion for summary judgment.

The Gateses also appeal the circuit court's exclusion of four exhibits they attached to their cross-motion for summary judgment. The circuit court struck three exhibits because they contained hearsay, were not properly authenticated, and contained information Mr. Gates declined to provide at his deposition when he asserted his Fifth Amendment right not to self-incriminate. It refused to consider another exhibit because it was not included in the record. Because the Gateses do not argue on appeal that the circuit court should have granted their summary-judgment motion, we do not decide the issues involving their exhibits.

Reversed and remanded.

WOMACK, J., concurs.

WYNNE, J., dissents.

6

**SHAWN A. WOMACK, Justice, concurring.** I agree DFA failed to establish *prima facie* entitlement to summary judgment and, therefore, join the majority opinion. I write separately to explain why sovereign immunity does not bar the Gateses' lawsuit against the State.

The Tax Procedure Act allows a taxpayer to appeal state-tax assessments "by filing suit for judicial relief" in circuit court.[1] Article 5, section 20 of the Arkansas Constitution, however, prohibits the State from ever becoming a defendant in any of its courts. Absent an express constitutional provision to the contrary, this prohibits a party from filing a lawsuit against either the State or its entities.[2]

In *Board of Trustees of the University of Arkansas v. Andrews*, we held that "legislative waiver[s] of sovereign immunity . . . [are] repugnant to article 5, section 20 of the Arkansas Constitution."[3] The Tax Procedure Act's allowance of judicial review is no different, to the extent it permits the State to be made a defendant in its own courts.[4] However, tax-assessment appeals are essentially illegal-exaction claims.[5]

---

[1]Ark. Code Ann. § 26-18-406(a)(1)(A) (Supp. 2021).

[2]*Thurston v. League of Women Voters of Ark.*, 2022 Ark. 32, at 17, 639 S.W.3d 319, 327 (Womack, J., dissenting) (rejecting judicially created exceptions to this constitutional prohibition).

[3]2018 Ark. 12, at 10, 535 S.W.3d 616, 622.

[4]*See id.*

[5]*See City of Jacksonville v. Smith*, 2018 Ark. 87, at 6, 540 S.W.3d 661, 666 (holding that "[a]n illegal exaction is defined as any exaction that either is not authorized by law or is contrary to law").

Concerning taxes, this court has recognized two species of illegal-exaction cases: first, public funds cases, where the plaintiff contends that public funds generated from tax dollars are being misapplied or illegally spent; and second, illegal-tax cases, where the plaintiff asserts that the tax itself is illegal.[6] A tax-assessment contest is, in effect, an illegal-tax claim. Insofar as an Arkansas taxpayer alleges that the State has mis-assessed his tax burden, he is alleging that the State has imposed an illegal tax because DFA may collect only those taxes authorized by state law.[7]

Therefore, when the State seeks to impose a tax burden on one or more of its citizens that exceeds the amount authorized by statute or our constitution, the State has imposed an illegal tax, i.e., an illegal exaction.[8] Because the constitution expressly authorizes illegal-exaction claims against the State, sovereign immunity does not bar the Gateses' tax-assessment contest.[9]

---

[6]*Prince v. Ark. State Highway Comm'n*, 2019 Ark. 199, at 5, 576 S.W.3d 1, 4.

[7]Ark. Code Ann. § 26-18-401(b)(1); *see also* Ark. Const. art. 16, § 11 ("No tax shall be levied except in pursuance of law, and every law imposing a tax shall state distinctly the object of the same . . . ." ).

[8]*See City of Jacksonville*, 2018 Ark. 87, at 6, 540 S.W.3d at 666.

[9]*Rutledge v. Remmel*, 2022 Ark. 86, at 10, 643 S.W.3d 5, 11 (Womack, J., concurring) (citing Ark. Const. art. 16, § 13).

**ROBIN F. WYNNE, Justice, dissenting.** From my de novo review of the record, I think the trial court correctly determined that DFA was entitled to summary judgment. Accordingly, I respectfully dissent.

A tax deduction is allowed only as a matter of legislative grace, and one claiming the deduction bears the burden of proving that he is entitled to it. *Weiss v. Am. Honda Fin. Corp.*, 360 Ark. 208, 213, 200 S.W.3d 381, 384 (2004). Therefore, if the Gateses contend that they are entitled to additional deductions beyond those allowed by DFA, they bear the burden of proving entitlement to those deductions. When parties file cross-motions for summary judgment, as was done here, they essentially agree that there are no material facts remaining to be litigated and that summary judgment is an appropriate means of resolving the case. *Douglas Cos., Inc. v. Walther*, 2020 Ark. 365, at 5, 609 S.W.3d 397, 400.

The majority concludes that DFA did not meet its prima facie burden of proving the total amounts of taxable income that it had calculated for 2015, 2016, and 2017. But exhibit J to DFA's motion for summary judgment shows the amount of net taxable income: $357,066 for 2015; $265,982 for 2016; and $204,097 for 2017. This exhibit also shows how DFA calculated the net taxable income: adjusted gross income as shown on the Gateses' tax returns, plus adjustments to the Gateses' business income made during the audit less deductions. To show the amount of taxable income, DFA attached to its motion for summary judgment the Gateses' individual tax returns; tax returns from their business, the Stonebridge Collection; and 1099s issued to the Stonebridge Collection and to Mr. Gates individually. At the request of counsel, DFA gave the Gateses a schedule of disallowed business expenses, attached as exhibit C to the Gateses' motion for summary judgment and

response to DFA's motion for summary judgment.[1] DFA did not have the burden of proving that the Gateses were not entitled to additional deductions.

In my view, DFA met its prima facie burden of showing that the Gateses were Arkansas residents who had income subject to Arkansas income tax. It did so through the Gateses' individual tax returns, business tax returns, and 1099s provided by the Gateses to DFA during the audit. The Gateses then had the burden of proving that they were entitled to additional deductions. *Am. Honda Fin. Corp.*, 360 Ark. at 213, 200 S.W.3d at 384. They failed to do so.

To support their argument that they were entitled to tax deductions, the Gateses point to several exhibits filed with their motion for summary judgment and response to DFA's motion: exhibit D (a series of spreadsheets explaining business expenses, not attached to an affidavit or otherwise authenticated), exhibit K (bank statements, canceled checks, and receipts, not attached to an affidavit or otherwise authenticated), and exhibit L (copies of receipts that were not served on DFA before the hearing on the summary-judgment motions and not filed with the Gateses' motion and response). They also rely on an electronic QuickBooks file, which was not filed with the trial court and is not part of the record. The trial court struck exhibits D and K because they "contain hearsay, are not properly authenticated, and contain information Mr. Gates declined to provide at his deposition." On appeal, the Gateses do not explain which hearsay exception would apply to these exhibits, and this court should not have to hunt for an exception. We will not make a party's

---

[1]The Gateses' motion for summary judgment and response to DFA's motion for summary judgment were combined into a single filing.

argument for them or consider an argument that is not properly developed. *Teris, LLC v. Chandler*, 375 Ark. 70, 86, 289 S.W.3d 63, 75 (2008). The trial court struck exhibit L because it was not introduced, nor was it part of the record. Because it is not in the record, we cannot consider it. We cannot consider the QuickBooks file either because it was not filed with the trial court and is not part of the record. In addition, Mr. Gates asserted his Fifth Amendment right and declined to answer questions about specific deductions, and Mrs. Gates did not testify at all. In short, the Gateses failed to meet proof with proof that they were entitled to additional deductions. Accordingly, the trial court did not err in granting summary judgment to DFA.

The majority also expresses uncertainty about the amount of tax that DFA says the Gateses owe. But the Amended and Corrected Notices of Final Assessment dated August 24, 2020, which are attached to the Gateses' complaint, plainly show the Gateses' tax liability—$23,864 for 2015; $17,262 for 2016; and $13,061 for 2017, excluding penalties and interest. How these numbers were calculated is apparent from the record. Take 2015. The August 24 Amended and Corrected Notice of Final Assessment shows $23,864 in tax liability. This number represents the amount of net tax shown on line 36 of the Gateses' individual tax return, attached as exhibit D to DFA's motion for summary judgment ($14,948—the same amount as in the August 14 Notice of Final Assessment), plus the additional tax liability determined by the audit ($8,916—the amount shown in the August 13 Summary of Findings attached as exhibit J to DFA's motion for summary judgment). The amount shown in the August 27 letter ($21,826) simply represents the total tax liability ($23,864) less the amount of income tax withheld ($2,038—the amount shown on line 37

11

of the Gateses' individual tax return).[2] The same calculations can be made for 2016 and 2017.[3]

Because I would affirm the trial court's order granting summary judgment to DFA, I respectfully dissent.

*DeWitt Law, PC*, by: *Tyler H. DeWitt* and *Clinton L. DeWitt*, for appellants.

*Keith K. Linder*, *Bradley B. Young*, and *Michelle L. Baker*, Office of Revenue Legal Counsel, for appellee.

---

[2]These numbers also explain what the majority characterizes as "DFA's fluctuating calculation of the Gateses' tax liability."

[3]There appears to be a clerical error in the August 14 Notice of Final Assessment for 2017. The amount should probably be $6,777, which is the amount listed on the Gateses' 2017 tax return, not $6,284, which is the audit adjustment reflected in the August 13 Summary of Findings.