# United States Court of Appeals
## For the Eighth Circuit

_____

No. 23-3055
_____

Donglan Xia

*Plaintiff - Appellant*

v.

Kika Scott,[1] Senior Official Performing the Duties of the Director, U.S. Citizenship and Immigration Services; Terri Robinson, in her official capacity as Director of the National Benefits Center of U.S. Citizenship and Immigration Services; Chief Appellate Immigration Judge of the Board of Immigration Appeals[2]

*Defendants - Appellees*
_____

Appeal from United States District Court
for the Western District of Missouri - Kansas City
_____

Submitted: November 20, 2024
Filed: February 27, 2025
_____

Before SHEPHERD, ARNOLD, and ERICKSON, Circuit Judges.
_____

---

[1]Senior Official Scott is automatically substituted for her predecessor under Federal Rule of Appellate Procedure 43(c)(2).

[2]David H. Wetmore is no longer the Chief Appellate Immigration Judge of the Board of Immigration Appeals.

ERICKSON, Circuit Judge.

Donglan Xia filed a Form I-130 Petition for Alien Relative ("I-130 petition") on behalf of her adopted nephew. On May 23, 2019, United States Citizenship and Immigration Services ("USCIS") denied the petition on the grounds that Xia did not demonstrate that (1) her nephew's adoption fell outside the scope of the Hague Convention on Protection of Children and Co-operation in Respect of Intercountry Adoption, 32 I.L.M. 1134 (1993) ("Hague Adoption Convention"); (2) her nephew had not entered the United States for the purpose of adoption; or (3) her nephew had established compelling ties to the United States at the time of his adoption. After the Board of Immigration Appeals ("BIA") dismissed Xia's appeal, she sought judicial review. The district court granted the government defendants' motion for summary judgment, and this appeal followed. We reverse and direct the case be remanded to the BIA for further proceedings consistent with this opinion.

I.    BACKGROUND

Donglan Xia became a United States citizen in 2010. Her nephew, Tian "Tim" Xia, was born in China in July 1997 and lived and went to school in China until August 2011. In August 2011, when Tim was 14 years old, he entered the United States on a temporary visitor visa to spend time with Xia. Tim stayed with Xia while his parents remained in China with plans to immigrate later. Tim's parents viewed the visit as an opportunity for Tim to begin adjusting to the American way of life in anticipation of what might be an eventual immigration to the United States. Xia enrolled Tim in middle school in Dallas, Texas, so he could expand his education before returning to China. When Tim's six-month visa was about to expire, an application was filed to extend his stay in the United States until August 2012. As that deadline approached, Tim's parents learned that the family would have to wait an additional six months to reenter the United States as permanent residents after their EB-5 petition for an immigrant visa was approved.

To avoid upending Tim's life, Tim's parents decided to relinquish their parental rights. In September 2012, Xia adopted Tim. About six months later, Tim's birthparents immigrated to the United States and began living in the same neighborhood as Xia. Tim continued to live with Xia and her husband until Xia lost her job in February 2014 and relocated. Tim then moved in with his birthparents to continue attending the same school. After Tim graduated from high school in 2016, he began attending Emory University. Tim credits his academic, athletic, and personal success in the United States to the care provided by Xia.

As a United States citizen, in January 2018, Xia filed an I-130 petition to classify Tim as an immediate relative to get preferential immigration status for him. See 8 U.S.C. § 1101(b)(1)(E) (2023). Because China is a party to the Hague Adoption Convention, classification under an I-130 petition was available for Tim only if his adoption was not subject to the Convention. Xia could have demonstrated Tim's adoption fell outside the Hague Adoption Convention by submitting evidence showing he was habitually resident in the United States at the time of his adoption. See 32 I.L.M. 1135, Hague Adoption Convention, Art. 14. According to USCIS's guidance, a United States citizen petitioner who is habitually resident in the United States may prove that the "Hague Adoption Convention does not apply" by showing that her "child is not habitually resident in" another Hague Adoption Convention country. See USCIS Policy Manual, Vol. 5, Part E, Ch. 3. With regard to a child, like Tim, who is present in the United States but a citizen of a different Hague Adoption Convention country, USCIS guidance would allow her to make this showing by providing either: (1) a written statement from the child's country of origin indicating the child is no longer deemed habitually resident in that country, or (2) if the petitioner cannot obtain a written statement, evidence that the petitioner meets the intent, actual resident, and notice criteria. Id. The parties dispute the correctness of USCIS's favored standard, but this dispute is not one we need to resolve to dispose of this appeal.

USCIS found that Xia failed to carry her burden of showing Tim's adoption was outside the scope of the Hague Adoption Convention. It also found that Xia had

not established that Tim did not enter the United States for the purpose of adoption or that he had developed compelling ties in the United States before the adoption. In affirming USCIS's decision and dismissing the appeal, the BIA noted that after Tim's arrival in the United States and before his adoption, Tim attended school in the United States and participated in religious and other extracurricular activities. The BIA then concluded that after "considering the specific facts and circumstances that led to his enrollment in school and these activities, the evidence submitted does not demonstrate that the beneficiary established such 'compelling ties' that he became a habitual resident of the United States during that period." On judicial review, the district court found that Xia had not shown any prejudicial error, and that substantial evidence supported the BIA's finding on the "facts and circumstances" regarding Tim's ties to the United States.

Xia now appeals.

## II.    DISCUSSION

We review the district court's grant of summary judgment *de novo*. Northport Health Servs. of Ark., LLC v. U.S. DHHS, 14 F.4th 856, 866 (8th Cir. 2021). Agency action must be set aside if it is arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law. 5 U.S.C. § 706(2)(A) (1966).

Xia contends the BIA's decision is deficient because it failed to provide sufficient reasoning to allow meaningful judicial review. The Administrative Procedure Act requires agencies to give a satisfactory explanation for its conclusions, including a showing of a rational connection between the facts found and the choice made. Northport Health, 14 F.4th at 873. An agency decision is arbitrary and capricious if it fails to consider an important aspect of the issue or provides no meaningful explanation for its conclusions. Id.

Here, the BIA found that after arriving in the United States and before his adoption, Tim had resided with Xia, attended school in the United States, and

participated in religious and other extracurricular activities.  Despite these findings, the BIA concluded, without any further explanation, that Tim's ties were not compelling enough to demonstrate his habitual residence in the United States.  The BIA decision fails to explain which "specific facts and circumstances" it considered and how those facts negated Tim's documented connections to the United States.  Without these factual findings, we are unable to conduct a meaningful review of the BIA's decision because we cannot discern the reasoning behind its conclusion or its application of the relevant factors to the legal standard.  See Payeras v. Sessions, 899 F.3d 593, 597 (8th Cir. 2018); see also Aguilar v. Garland, 60 F.4th 401, 407 (8th Cir. 2023) (quoting Sec. & Exch. Comm'n v. Chenery Corp., 332 U.S. 194, 196 (1947)) ("[A] reviewing court, in dealing with a determination or judgment which an administrative agency alone is authorized to make, must judge the propriety of such action solely by the grounds invoked by the agency.").

When there is a lack of a reasoned explanation, we typically remand the case to the BIA.[3]  See e.g., Payeras, 899 F.3d at 597–98 (remanding for clarity on what the BIA "implicitly concluded"); Ortega-Marroquin v. Holder, 640 F.3d 814, 820 (8th Cir. 2011) (remanding due to lack of jurisdiction over issues the BIA "did not address"); Gachanja v. Gonzales, 170 F. App'x 447, 447–48 (8th Cir. 2006) (per curiam) (remanding because the BIA was "adopting and affirming the IJ's decision" without explanation).  While the government asserts that any deficiency in the BIA's explanation is harmless, agency errors are only harmless if the record demonstrates "a significant chance" the agency would reach the same conclusion on remand.  Cent. S.D. Co-op. Grazing Dist. v. Sec'y of Agric., 266 F.3d 889, 899 (8th Cir. 2001).  This is not such a case because determining Tim's habitual residence requires an analysis of his connections to the United States as well as his circumstances in China.  The BIA, not this Court, is tasked with making that determination in the first instance.  See INS v. Orlando Ventura, 537 U.S. 12, 16–17 (2002) (per curiam) ("[A]

---

[3]If the BIA "expressly adopted" an immigration judge's findings or reasoning, we will review them.  Mumad v. Garland, 11 F.4th 834, 837 (8th Cir. 2021).  In this case, the findings and reasoning came from USCIS and were not expressly adopted.

court of appeals should remand a case to an agency for decision of a matter that statutes place primarily in agency hands.").

## III.  CONCLUSION

For the foregoing reasons, we reverse the judgment of the district court with instructions to remand the case to the BIA for further proceedings.

_____