Cite as 2025 Ark. 48

# SUPREME COURT OF ARKANSAS
No. CV–24–558

| | |
|---|---|
| MICHAEL W. GATES AND SUSAN J. GATES<br><br>APPELLANTS<br><br>V.<br><br>JIM HUDSON, SECRETARY, DEPARTMENT OF FINANCE AND ADMINISTRATION OF THE STATE OF ARKANSAS<br><br>APPELLEE | Opinion Delivered: April 24, 2025<br><br>APPEAL FROM THE GARLAND COUNTY CIRCUIT COURT [NO. 26CV-21-100]<br><br>HONORABLE GARY M. ARNOLD, JUDGE<br><br>AFFIRMED. |

**NICHOLAS J. BRONNI, Associate Justice**

This case is about what Michael and Susan Gates owe in taxes. It started with the Gateses' failure to file individual or corporate tax returns between 2012 and 2017. Mr. Gates eventually pled no contest to one count of failing to file or pay taxes, and he was ordered to file tax returns for 2015, 2016, and 2017. The Department of Finance and Administration (DFA) audited those returns and concluded that the Gateses had not properly calculated their tax liability for all three years.

The Gateses disputed that determination and submitted additional documentation concerning certain business expenses. DFA then reversed some of its deduction disallowances, adjusted its calculations, and determined the Gateses owed a different amount. The Gateses disputed that number too, and this lawsuit followed. Following discovery, the circuit court held that DFA was entitled to summary judgment on the Gateses' claim that

DFA had improperly calculated their tax liability. This court reversed and remanded, agreeing with the Gateses that DFA had failed to explain its math and thus had not carried its *prima facie* burden of demonstrating the couple's tax liability.

On remand, DFA introduced evidence detailing its disallowance decisions and calculations. It moved for summary judgment again, and the circuit court granted that motion based on this new evidence and the Gateses' failure to meaningfully respond to that evidence. We affirm.

**Background**

In August 2019, the Gateses filed their 2015, 2016, and 2017 tax returns, and pursuant to an order in Mr. Gates's criminal case, DFA audited those returns. As part of that audit, DFA made two key adjustments to the Gateses' net taxable income: (1) it added additional 1099 income that it said the couple had not included on their returns; and (2) it disallowed several deductions claimed by the couple's S-corporation, Stonebridge Collection, Inc. Those adjustments increased the Gateses' tax liability. In response, the Gateses requested the schedules supporting DFA's adjustments. They then submitted both documentation and a spreadsheet disputing many of the disallowances. DFA thereafter reduced—but did not eliminate—its adjustments to the Gateses' net tax liability.

Following the initial audit, DFA sent the Gateses several communications about their tax liability. DFA intended those communications to clarify the situation, but as *Gates I* explained, they had the opposite effect. Two sets of communications are relevant here. First, after the Gateses submitted their documentation disputing the initial audit filings, on August 13, 2020, DFA sent the Gateses three "Summary of Findings" documents. Each

summary covered a single year and detailed the Gateses' adjusted taxable income and corresponding tax liability. Second, just over a week later, on August 24, 2020, DFA sent the Gateses three Amended and Corrected Notices of Final Assessment. Those notices calculated what the Gateses owed for each year—combining the liability the Gateses had reported on their original tax returns and DFA's final adjustments as reflected in the August 13 summaries. Some back-and-forth followed, but as we noted in *Gates I*, communication between DFA and the Gateses largely broke down.

Thereafter, on February 2, 2021, the Gateses filed this lawsuit under the Taxpayer Procedure Act, arguing that DFA miscalculated their tax liability for 2015, 2016, and 2017. Following discovery, DFA moved for summary judgment, which the circuit court granted. The Gateses appealed.

On appeal, in *Gates I*, we concluded that DFA had failed to carry its *prima facie* burden of establishing the Gateses' tax liability and that, as a result, summary judgment was not appropriate. Particularly relevant here, we explained that DFA had failed to show its math or establish how it calculated the Gateses' tax liability. Far from it, we noted that DFA had not "show[n] which 1099 income it included or which business deductions it excluded" from its calculations. *Gates v. Walther*, 2023 Ark. 74, at 5, 665 S.W.3d 217, 220. Without that information, DFA could not establish the couple's tax liability. *Id*.

On remand, DFA moved for summary judgment a second time. This time, DFA supported its motion with an affidavit from Melissa Guin, DFA's lead auditor. Her affidavit detailed DFA's income calculations and attached more than 50 exhibits documenting the 1099 income DFA included and the deductions it disallowed. DFA also attached the notices

3

the Gateses challenged—instead of DFA's earlier, superseded notices. The Gateses responded by arguing that DFA had failed to carry its *prima facie* burden, and they filed thousands of pages of documents that they claimed supported that argument. Those documents included the spreadsheet that the Gateses had sent in response to DFA's initial disallowance decisions, Stonebridge's bank statements, receipts, and Stonebridge's profit and loss statements. Yet they did not explain how those documents undermined DFA's determinations or calculations.

Recognizing that, at the summary judgment hearing, the circuit court repeatedly asked the Gateses to explain which calculations and disallowances they disputed and why. The Gateses declined to do so. Instead, they simply insisted that their documents somehow refuted DFA's disallowances and argued that 1099s are not *prima facie* evidence of taxable income.

The circuit court struck the Gateses' exhibits on evidentiary grounds. But it concluded that even if it considered those exhibits, DFA would still be entitled to summary judgment because DFA had carried its *prima facie* burden of establishing the Gateses' taxable income and liability and the Gateses had failed to dispute any specific disallowance or calculation.

The Gateses timely appeal.

**Discussion**

The Gateses seek reversal of the circuit court's order granting DFA's motion for summary judgment. Summary judgment is appropriate "only when it is clear that there are no genuine issues of material fact to be litigated[] and the party is entitled to judgment as a

4

matter of law." *Scamardo v. Sparks Reg'l Med. Ctr.*, 375 Ark. 300, 305, 289 S.W.3d 903, 906 (2008). We review circuit court orders granting summary judgment de novo, viewing the evidence in the light "most favorabl[e]" to the Gateses. *Jackson v. City of Blytheville Civ. Serv. Comm'n*, 345 Ark. 56, 60, 43 S.W.3d 748, 751 (2001).[1]

---

[1]An aside about the standard of review. This court has long reviewed summary judgement orders "de novo." That is, we have not given lower court decisions on summary judgment any deference. The concurrence does not dispute that. Yet it treats the phrase de novo review like the name Voldemort, urging us not to say it. It is not clear why.

To be sure, on summary judgment, we view the evidence in the light most favorable to the non-moving party. But that is not a standard of review; it is the framework that we—and lower courts—use to evaluate summary judgment. A standard of review describes the level of deference we give a lower court's decision. And the concurrence does not dispute that we do not give a lower court's summary judgment decision any deference.

Acknowledging that hardly creates confusion. Far from it, it brings us in line with nearly every other jurisdiction. *See, e.g.*, *Eastman Kodak Co. v. Image Tech. Servs., Inc.*, 504 U.S. 451, 466 (1992); *Xia v. Scott*, 129 F.4th 1084, 1087 (8th Cir. 2025); *Ex parte Triad of Alabama, LLC*, 396 So. 3d 191, 194 (Ala. 2024); *Smith v. Dep't of Corr.*, 564 P.3d 282, 288 (Alaska 2025); *Perez v. Circle K Convenience Stores, Inc.*, 564 P.3d 623, 626 (Ariz. 2025); *Bailey v. San Francisco Dist. Attorney's Off.*, 552 P.3d 433, 439 (Cal. 2024); *Univ. of Denver v. Doe*, 547 P.3d 1129, 1134 (Colo. 2024); *Hartford Fire Ins. Co. v. Moda, LLC*, 288 A.3d 206, 211 (Conn. 2023); *GMG Ins. Agency v. Edelstein*, 328 A.3d 302, 309 (Del. 2024); *Treasure Coast Marina, LC v. City of Fort Pierce*, 219 So. 3d 793, 802 (Fla. 2017); *Prodigies Child Care Mgmt., LLC v. Cotton*, 893 S.E.2d 640, 643 (Ga. 2023); *Jardine v. State*, 556 P.3d 406, 414 (Haw. 2024); *Kelso v. Applington*, 548 P.3d 363, 367 (Idaho 2024); *Zurich Am. Ins. Co. v. Infrastructure Eng'g, Inc.*, 248 N.E.3d 1072, 1080 (Ill. 2024); *Indiana Dep't of Ins. v. Doe*, 247 N.E.3d 1204, 1210 (Ind. 2024); *Benchmark Prop. Remodeling, LLC v. Grandmothers, Inc.*, 553 P.3d 974, 980 (Kan. 2024); *State Auto Prop. & Cas. Co. v. Greenville Cumberland Presbyterian Church*, 706 S.W.3d 35, 43 (Ky. 2024); *Longo v. 700B8*, 400 So. 3d 913, 914 (La. 2025); *Att'y Gen. v. Pine Tree Council, Inc.*, 331 A.3d 258, 263 (Me. 2025); *Rovin v. State*, 321 A.3d 201, 217 (Md. 2024); *Theisz v. Massachusetts Bay Transp. Auth.*, 252 N.E.3d 1028, 1032 (Mass. 2025); *Danhoff v. Fahim*, 15 N.W.3d 262, 270 (Mich. 2024); *Reichel v. Wendland Utz, LTD*, 11 N.W.3d 602, 612 (Minn. 2024); *ACE Am. Ins. Co. v. Hetsco, Inc.*, 393 So. 3d 1015, 1021 (Miss. 2024); *Sachtleben v. Alliant Nat'l Title Ins. Co.*, 687 S.W.3d 624, 629 (Mo. 2024); *Kipfinger v. Great Falls Obstetrical & Gynecological Assocs.*, 525 P.3d 1183, 1193 (Mont. 2023); *Galloway v. Husker Auto Grp., LLC*, 14 N.W.3d 218, 223 (Neb. 2024); *Controlled Chaos Inc. v. Arts Dist. Holdings LLC*, 559 P.3d 361 (Nev. 2024); *Szewczyk v. Cont'l Paving, Inc.*, 307 A.3d 502, 516 (N.H. 2023); *Matter of Est. of Jones*, 328 A.3d 923,

The Gateses seek reversal on three grounds. First, they argue that either collateral estoppel or law of the case precludes DFA's latest motion for summary judgment. Second, they argue that even if that is not the case, genuine disputes of material fact remain concerning the Gateses' tax liability and that makes summary judgment inappropriate. And third, they argue that the circuit court erred in striking their summary judgment exhibits. We reject the first two arguments on the merits; do not reach the third; and affirm the circuit court's decision granting summary judgment.

<u>Preclusion</u>

The Gateses argue that *Gates I*'s finding that the record was insufficient to support summary judgment prevents DFA from renewing its motion. They frame that claim as both a collateral estoppel and law of the case argument. Neither applies.

Start with collateral estoppel. Collateral estoppel is an issue preclusion doctrine that prevents parties from relitigating "issues of law or fact previously litigated by the parties." *Palmer v. Arkansas Council on Econ. Educ.*, 344 Ark. 461, 471, 40 S.W.3d 784, 789 (2001).

929 (N.J. 2025); *Ridlington v. Contreras*, 501 P.3d 444, 448 (N.M. 2021); *Dep't of Transportation v. Bloomsbury Ests., LLC*, 905 S.E.2d 36, 46 (N.C. 2024); *City of Fargo v. State*, 14 N.W.3d 902, 907 (N.D. 2024); *Harris v. Hilderbrand*, 224 N.E.3d 1118, 1124 (Ohio 2023); *Marshall v. City of Tulsa*, 558 P.3d 1220, 1225 (Okla. 2024); *Khalil v. Williams*, 278 A.3d 859, 871 (Pa. 2022); *Blouin v. Koster*, 319 A.3d 654, 659 (R.I. 2024); *Remington v. Wild Bill's Campground & Resort, LLC*, 16 N.W.3d 252, 257 (S.D. 2025); *Pharma Conf. Educ., Inc. v. State*, 703 S.W.3d 305, 311 (Tenn. 2024); *Inwood Nat'l Bank v. Fagin*, 706 S.W.3d 342, 346 (Tex. 2025); *Rossi v. Univ. of Utah*, 496 P.3d 105, 111 (Utah 2021); *In re Pederzani Admin. Appeal*, 328 A.3d 1278, 1281 (Vt. 2024); *GEICO Advantage Ins. Co. v. Miles*, 879 S.E.2d 908, 910 (Va. 2022); *Pub. Util. Dist. No. 1 of Snohomish Cnty. v. State*, 562 P.3d 343, 347 (Wash. 2025); *Potomac Comprehensive Diagnostic & Guidance Ctr., Inc. v. L.K. by Young*, 902 S.E.2d 434, 442 (W. Va. 2024); *Bauer v. Wisconsin Energy Corp.*, 970 N.W.2d 243, 247 (Wis. 2022); *Sorensen v. Halling*, 561 P.3d 1241, 1244 (Wyo. 2025); *Onyeoziri v. Spivok*, 44 A.3d 279, 283 (D.C. 2012).

For that doctrine to apply, four things must be true: "(1) the issue sought to be precluded must be the same as that involved in the prior litigation; (2) [it] must have been actually litigated; (3) it must have been determined by a valid and final judgment; and (4) the determination must have been essential to the judgment." *Johnson v. Union Pac. R.R.*, 352 Ark. 534, 544, 104 S.W.3d 745, 750 (2003).

The Gateses cannot make that showing. DFA's motion for summary judgment does not attempt to relitigate an issue that was resolved in another, previous matter. There was no previous matter—let alone one that proceeded to final judgment. Rather, DFA's motion is simply the latest skirmish in the same, ongoing litigation. So collateral estoppel does not apply and did not prevent the circuit court from entering summary judgment on a new, expanded record.

The law of the case doctrine, by contrast, does not require a prior judgment. *See United States v. Reyes-Romero*, 959 F.3d 80, 93 (3d Cir. 2020) (issue preclusion only applies "in a subsequent action" while law of the case controls "[r]elitigation of issues previously determined in the *same* litigation" (emphasis in original) (internal citations omitted)); *Entergy Arkansas, Inc. v. Allen*, 2021 Ark. App. 71, at 18, 618 S.W.3d 427, 438 ("Unlike law of the case, collateral estoppel may bar a party from relitigating an issue decided against it in a later and different case." (internal citation omitted)). Instead, that doctrine "prohibits a court from reconsidering issues of law and fact that have already been decided on appeal" in the same matter. *Cadillac Cowboy, Inc. v. Jackson*, 347 Ark. 963, 970, 69 S.W.3d 383, 388 (2002); *accord Green v. George's Farms, Inc.*, 2011 Ark. 70, at 7, 378 S.W.3d 715, 720 ("The doctrine provides that a decision of an appellate court establishes the law of the case for the trial upon

remand and for the appellate court itself upon subsequent review."). Thus, under that doctrine, the circuit court could not reconsider our conclusion in *Gates I* that DFA bears the initial burden of proving a taxpayer's liability or our finding that the original record was insufficient to support summary judgment. *Gates*, 2023 Ark. 74, at 4, 665 S.W.3d at 219.

But that is not what happened here. Instead, following our guidance in *Gates I*, DFA introduced new evidence—Guin's affidavit and its accompanying exhibits—and the circuit court concluded that new evidence filled the evidentiary gap that had previously precluded summary judgment. That is, it explained DFA's calculations and established "the total amounts of taxable income that [DFA] had calculated for 2015, 2016, and 2017." *Id*. at 6, 665 S.W.3d at 220. And the law of the case doctrine does not prevent DFA from supplementing the record and renewing its motion based on that new evidence. *See Cannady v. St. Vincent Infirmary Med. Ctr.*, 2018 Ark. 35, at 7, 537 S.W.3d 259, 264 (subsequent depositions made it appropriate for the employer to seek summary judgment a second time on remand); *Yeschick v. Mineta*, 675 F.3d 622, 633 (6th Cir. 2012) (affirming grant of second summary judgment motion despite prior remand based on genuine dispute of material fact). Moreover, that is true even though, as the Gateses argue, much of the rest of the record remained unchanged. *See Green*, 2011 Ark. 70, at 9, 378 S.W.3d at 721 (the test is not whether the moving party added enough new evidence, but rather, whether the new evidence is "sufficiently material to overcome the law-of-the-case doctrine").

So neither collateral estoppel nor law of the case doctrine precluded the circuit court's order.

<u>Summary Judgment</u>

The Gateses also challenge the merits of the circuit court's summary judgment decision. We apply a burden shifting framework to summary judgment, and to prevail under that framework, the movant must make a *prima facie* showing that it is entitled to judgment and that no genuine dispute of material fact exists. *Flentje v. First Nat. Bank of Wynne*, 340 Ark. 563, 569, 11 S.W.3d 531, 536 (2000). If the movant makes that showing, the burden then shifts to the respondent to "meet proof with proof by showing a material issue of fact" that would preclude summary judgment. *Oxford v. Perry*, 340 Ark. 577, 581–82, 13 S.W.3d 567, 570 (2000). In making that showing, a respondent is not entitled to simply repeat allegations but must "set forth specific facts showing that there is a genuine issue for trial." Ark. R. Civ. P. 56(e); *see Flentje*, 340 Ark. at 569, 11 S.W.3d at 536 ("When the movant makes a prima facie showing . . . , the respondent must discard the shielding cloak of formal allegations and meet proof with proof . . . ."). If the respondent does not make that showing, then the movant is entitled to judgment.

We likewise employ a burden shifting approach to resolve tax cases, requiring DFA to carry an initial burden of demonstrating tax liability by a preponderance of the evidence and then shifting the burden to the taxpayer to "prov[e] any deductions." *Gates*, 2023 Ark. 74, at 4, 665 S.W.3d at 219; *accord Leathers v. A & B Dirt Movers, Inc.*, 311 Ark. 320, 325, 844 S.W.2d 314, 316 (1992) ("The agency claiming the right to collect a tax bears the burden of proving that the tax law applied to the item sought to be taxed."); *Weiss v. Am. Honda Fin. Corp.*, 360 Ark. 208, 213, 200 S.W.3d 381, 384 (2004) ("A tax deduction is

9

allowed only as a matter of legislative grace and one claiming the deduction bears the burden of proving that he is entitled to it.").

Melding those standards, *Gates I* explained that to prevail on summary judgment here, DFA must first "meet its prima facie burden" by "prov[ing] the Gateses' net taxable income and resulting tax liability for 2015–2017." *Gates*, 2023 Ark. 74, at 4, 665 S.W.3d at 219. That requires DFA to show "which 1099 income it included" in its calculations as well as "which business deductions it excluded" in calculating the Gateses' tax liability. *Id*. at 4, 665 S.W.3d at 220. If DFA does so, the burden then shifts to the Gateses to meet proof with proof and demonstrate a genuine dispute concerning DFA's calculations or disallowances.

Applying that approach, the circuit court held that DFA had met its burden and the Gateses had failed to meet proof with proof. Reviewing that decision de novo and viewing the evidence in the light most favorable to the Gateses, we affirm.

*A. DFA's Prima Facie Burden*

As the circuit court concluded, DFA carried its initial burden of demonstrating the Gateses' net income and tax liability for 2015, 2016, and 2017.

In *Gates I*, we concluded that DFA had failed to carry its *prima facie* burden "because the math in the record [did] not add up" and DFA had failed to explain how it calculated the Gateses' net taxable income or liability. *Id*. at 4–5, 665 S.W.3d at 220. To the contrary, the record at that point merely showed that DFA had sent the Gateses communications reflecting different amounts and claimed that the adjustments reflected in those communications were the result of "*some* income shown on 1099 forms" and the rejection

10

of some, unidentified deductions. *Id*. at 5, 665 S.W.3d at 220 (emphasis in original). That required reversal of the circuit court's previous order.

DFA has now remedied that deficiency. In stark contrast to the record in *Gates I*, Guin's affidavit makes it possible to track DFA's calculation of the Gateses' net taxable income and corresponding tax liability. Take 2015 as an example. As illustrated in the chart below, Guin's affidavit identifies $91,138 in disallowed deductions and $36,234 in 1099 income above that reported on the Gateses' tax return. When these numbers are added together, it equals DFA's adjustment to the Gateses' net taxable income—$127,372. And as the August 13, 2020 Summary of Findings for the 2015 tax year illustrate, that adjustment—when added to the Gateses original return—results in a tax liability of $23,864. That figure matches the tax liability listed on the August 24, 2020 Amended and Corrected Notice of Final Assessment for 2015 that the Gateses challenge here.[2] And as the chart below also illustrates, Guin's affidavit makes it similarly easy to track DFA's calculations for 2016 and 2017.

|  | Disallowed Deductions (Affidavit) | 1099 Income Added (Affidavit) | Net Income Adjustments (Summary) | Tax Liability (Summary) | Tax Liability (Notice) |
|---|---|---|---|---|---|
| Tax Year 2015 | $91,138 | $36,234 | $127,372 | $23,864 | $23,864 |
| Tax Year 2016 | $68,101 | $25,771 | $93,872 | $17,262 | $17,262 |

---

[2]The Gateses argue that DFA cannot rely on the Summary of Findings documents to establish their net taxable income because those documents were superseded by later–issued Amended and Corrected Notices of Final Assessment. But no one argues those Summary of Findings documents establish the Gateses' final tax liability. Instead, they merely summarize the calculations supported by Guin's affidavit.

| Tax Year 2017 | $76,409 | $14,654 | $91,063 | $13,061 | $13,061 |
|---|---|---|---|---|---|

Critically, Guin's affidavit also explains why DFA rejected certain deductions and included additional income in its calculations. That affidavit includes more than 50 exhibits documenting every deduction transaction that DFA disallowed and showing what additional 1099 income DFA included in calculating the Gateses' final tax liability. For instance, taking another example from 2015, those exhibits show that among the $91,138 in deductions that DFA disallowed for that year, DFA rejected the Gateses' deduction for $229.28 in purchases from a hardware store on July 6, 2015, because it lacked proper documentation. This level of detail is precisely what *Gates I* explained was required for summary judgment. So DFA has met its *prima facie* burden, and the burden shifts to the Gateses to demonstrate that genuine disputes of material fact remain.

*B. The Gateses' Rebuttal*

The Gateses fail to carry their burden on rebuttal. To show a genuine dispute remains, the Gateses point to what they term a "tsunami of documents" supporting their deduction claims. But documents—tsunamis or otherwise—do not entitle litigants to a trial, only specific facts do. And the Gateses do not point to specific facts.

The Gateses do not explain how any specific document raises a genuine issue of material fact about whether DFA improperly disallowed a particular deduction. In fact, when the circuit court asked the Gateses to pick a disallowance and explain why they disagreed with DFA's conclusions, the Gateses declined. Instead, they responded generically, claiming they disagreed with every disallowance that DFA concluded was

unsupported by documentation and that their "tsunami of documents" supported their position. Likewise, before this court, the Gateses failed to point to any specific evidence suggesting that DFA had erred in disallowing a deduction—substituting slogans like "the math still ain't mathing" for evidence. Oral Argument at 3:20 (Mar. 6, 2025), archived at https://perma.cc/M9JS-DBUA. *Gates v. Walther*, 2025 Ark. 48 (No. CV-24-558).

At best, the Gateses' general citation to a "tsunami of documents" suggests they believe it is the court's role—not the Gateses'—to search the record and identify issues of material fact that might preclude summary judgment. That suggestion conflicts with Rule 56's plain language, the burden-shifting framework we apply to resolve summary judgment disputes, and the party-presentation principle. *See* Ark. R. Civ. P. 56(e) (requiring nonmovant to respond with specific facts); *Flentje*, 340 Ark. at 569, 11 S.W.3d at 536 (explaining that the respondent bears the burden of meeting proof with proof); *Cypert v. State*, 2025 Ark. 11, at 6, 705, S.W.3d 496, 499 (explaining that pursuant to the party-presentation principle, this court only reviews matters briefed and argued by the parties). Indeed, courts do not have an "affirmative obligation to plumb the record in order to find a genuine issue of material fact." *Barge v. Anheuser–Busch, Inc.*, 87 F.3d 256, 260 (8th Cir. 1996) (applying federal equivalent); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986) (respondent must "designate" specific facts under federal equivalent); *Richards v. Combined Ins. Co. of Am.*, 55 F.3d 247, 251 (7th Cir. 1995) ("It is not our task, or that of the district court, to scour the record in search of a genuine issue of triable fact."); *Keenan v. Allan*, 91 F.3d 1275, 1279 (9th Cir. 1996) (same); *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 672 (10th Cir. 1998) ("[W]here the burden to present such specific facts . . . was not adequately

13

met below, we will not reverse a district court for failing to uncover them itself."). Rather, to avoid summary judgment, it was the Gateses' responsibility "to point out genuine issues of material fact" and "bring such issues to the attention of the court." *Bennett v. Dr Pepper/Seven Up, Inc.*, 295 F.3d 805, 808 (8th Cir. 2002).

We therefore reject any suggestion in this court's prior case law[3] that a respondent may sit "secure in the knowledge that the [trial] court would be required to excavate all of the presented record, and find for itself any nuggets of evidence that might demonstrate genuine issues of material fact." *Guarino v. Brookfield Twp. Trustees*, 980 F.2d 399, 405 (6th Cir. 1992); *see also Comm'r of Labor v. Danco Constr. Co.*, 226 Ark. 797, 799, 294 S.W.2d 336, 337 (1956) (it is not this court's role "to make an individual search of the record, . . . in the absence of proper references thereto, in order to arrive at a decision, and it is not practical to do so"). Rather, we reiterate that it is the respondent's duty to point to specific facts demonstrating genuine issues remain and that generic references to the record are not sufficient to meet that burden. *See Foscue v. McDaniel*, 2009 Ark. 223, at 12–14, 308 S.W.3d 122, 128–29.

In the end, the Gateses had every opportunity to pick one receipt, bank statement, or other document showing that DFA improperly calculated their net taxable income or liability. They declined to do so. We thus conclude that they have failed to point to any evidence demonstrating that they carried their burden of meeting proof with proof.

---

[3] *See Franklin v. Osca, Inc.*, 308 Ark. 409, 412, 825 S.W.2d 812, 814 (1992).

We do not reach the Gateses' argument that the circuit court erred in striking their summary judgment exhibits. The circuit court concluded that even if it considered those exhibits—the so-called "tsunami of documents" here—it would not preclude summary judgment. As set forth above, we reach the same conclusion and therefore need not reach the Gateses' evidentiary objections. *See Bayird v. Floyd*, 2009 Ark. 455, at 11, 344 S.W.3d 80, 87 (refusing to review arguments for reversal of summary judgment where lack of facts made examination of those arguments unnecessary).

## Conclusion

DFA carried its burden of proving the Gateses' net income and tax liability, and the Gateses failed to meet proof with proof and demonstrate that any genuine disputes of material fact remained. We affirm the circuit court's order granting DFA's motion for summary judgment.

Affirmed.

BAKER, C.J., and HUDSON and WOMACK, JJ., concur.

**COURTNEY RAE HUDSON, Justice, concurring.** I join the majority opinion in all respects except its statement that "[w]e review circuit court orders granting summary judgment de novo, viewing the evidence in the light 'most favorabl[e]' to the Gateses. *Jackson v. City of Blytheville Civ. Serv. Comm'n*, 345 Ark. 56, 60, 43 S.W.3d 748, 751 (2001)." Notably, *Jackson* does not state that this court reviews orders granting summary judgment

de novo. No Arkansas case does.[1] We have long reviewed orders granting summary judgment as follows:

> The law is well settled regarding the *standard of review* used by this court in reviewing a grant of summary judgment. A circuit court will grant summary judgment only when it is apparent that no genuine issues of material fact exist requiring litigation and that the moving party is entitled to judgment as a matter of law. Once the moving party has established a prima facie entitlement to summary judgment, the opposing party must meet proof with proof and demonstrate the existence of a material issue of fact. In reviewing a grant of summary judgment, an appellate court determines if summary judgment was appropriate based on whether the evidentiary items presented by the moving party in support of the motion left a material question of fact unanswered. We view the evidence in the light most favorable to the party against whom the motion was filed, resolving all doubts and inferences against the moving party.

*Stokes v. Stokes*, 2016 Ark. 182, at 8–9, 491 S.W.3d 113, 119–20 (emphasis added) (internal citations omitted). This language, or a substantially similar version of it, has been our standard of review for decades. *E.g.*, *Hendrix v. Mun. Health Benefit Fund*, 2022 Ark. 218, at 7, 655 S.W.3d 678, 682; *Nationwide Mut. Fire Ins. Co. v. Citizens Bank & Tr. Co.*, 2014 Ark. 20, at 3–4, 431 S.W.3d 292, 294; *K.C. Props. of Nw. Ark., Inc. v. Lowell Inv. Partners, LLC*, 373 Ark. 14, 280 S.W.3d 1 (2008); *Flentje v. First Nat'l Bank of Wynne*, 340 Ark. 563, 568–70, 11 S.W.3d 531, 535–36 (2000); *Stockton v. Sentry Ins.*, 337 Ark. 507, 510–11, 989 S.W.2d 914, 916 (1999); *Reagan v. City of Piggott*, 305 Ark. 77, 81, 805 S.W.2d 636, 638 (1991); *Rowland v. Gastroenterology Assocs., P.A.*, 280 Ark. 278, 280, 657 S.W.2d 536, 537 (1983). Indeed, regardless of whether we call the above language a "standard of review," as

---

[1]Of course, this court reviews issues of law de novo, whether in the context of summary judgment or not. *Walther v. Welspun Tubular, LLC*, 2021 Ark. 90, at 4–5, 622 S.W.3d 146, 148 (stating that we review issues of law requiring statutory interpretation de novo); *Mississippi Cnty. v. City of Blytheville*, 2018 Ark. 50, at 10, 538 S.W.3d 822, 829 (as to issues of law presented in an appeal from the grant of summary judgment, our review is de novo).

this court has for many years, or a "framework," as the majority does in its footnote, the point remains that "de novo" review of summary judgment appears for the first time in this case.

In this case, the parties did not argue for a departure from our standard-of-review language; the majority makes this change sua sponte. In my view, it is unwise—and potentially confusing to the bench and bar—to deviate from our long-settled standard of review in summary-judgment cases. Therefore, I respectfully concur.

BAKER, C.J., joins.

**SHAWN A. WOMACK, Justice, concurring.** I join the majority's decision to affirm because the Gateses failed to meet proof with proof in response to DFA's motion for summary judgment. I write separately to address the circuit court's decision to strike the vast majority of the Gateses' exhibits, which they had attached to their response in opposition.

Although the Gateses claimed at oral argument that they had addressed DFA's motion to strike in their response to DFA's motion for summary judgment, this is impossible because DFA did not move to strike the exhibits until after the Gateses had responded. Because the Gateses never challenged DFA's motion to strike below, their argument on this issue is not preserved for appeal.[2] Nevertheless, there is a serious underlying issue with how this played out below that, while unpreserved and not proper for inclusion in a majority opinion, I will address in this concurrence.

---

[2] *C.J. Mahan Constr. Co. v. Betzner*, 2021 Ark. 42, at 9.

17

Arkansas Rule of Civil Procedure 12(f) governs motions to strike. The rule provides that, upon motion of a party or the court's own initiative, "the court may order stricken from any *pleading* any insufficient defense or any redundant, immaterial, impertinent or scandalous matter."[3] Because exhibits to summary judgment motions are not pleadings, they cannot be stricken pursuant to Rule 12(f).

When asked about this issue at oral argument, DFA contended that exhibits to summary judgment responses are pleadings "because a motion for summary judgment is a pleading." This is wrong. By rule, pleadings consist of complaints, answers, counterclaims, answers to counterclaims, cross-claims, answers to a cross-claim, third-party complaints, and third-party answers.[4] Pleadings do not include, as DFA claims, motions for summary judgment, the responses in opposition, or any exhibits attached to either. "Pleadings" is a precise legal term with a specific meaning—it does not include everything that is filed in a case. Therefore, to the extent the circuit court struck the Gateses' exhibit pursuant to Rule 12(f), that was error. However, because the Gateses failed to contest DFA's motion to strike below, DFA is still entitled to summary judgment.

I respectfully concur.

*DeWitt Law, PC*, by: *Tyler H. DeWitt* and *Clinton L. DeWitt*, for appellants.

*Keith K. Linder, Bradley B. Young*, and *Michelle L. Baker*, Office of Revenue Legal Counsel, for appellee.

---

[3]Ark. R. Civ. P. 12(f) (emphasis added).

[4]Ark. R. Civ. P. 7(a).